217 So.2d 741 (1969)
MICHIGAN WISCONSIN PIPE LINE CO., Plaintiff-Appellee,
v.
Samuel BONIN et al., Defendant-Appellants.
No. 2540.
Court of Appeal of Louisiana, Third Circuit.
January 16, 1969.
Rehearing Denied February 5, 1969.
Writ Refused March 13, 1969.
*742 J. B. Willis, St. Martinville, for defendant-appellants.
Shotwell, Brown & Sperry, by Burt W. Sperry, Monroe, Earl H. Willis, St. Martinville, for plaintiff-appellee.
Before SAVOY, HOOD and MILLER, JJ.
MILLER, Judge.
The principal issue presented in this appeal concerns the refusal of the trial court to grant severance damages to defendants (landowners) in this expropriation case, where plaintiff seeks a servitude for a 30-inch pipeline. Landowners-appellants additionally assign as errors the trial court's holdings: (1) that failure of defendants to answer within 10 days made it unnecessary for plaintiff to prove that it had a Certificate of Public Use and Necessity and that it had a right to expropriate; (2) that the citation on defendants used in this case foreclosed all defenses except defendants' claim for additional damages; (3) that appellants were not entitled to a jury trial; and (4) concerning the admissibility of evidence.
Landowners were awarded $550.00 for the servitude and no severance damages. They appeal contending first that the award of the servitude should be reversed; alternatively that the case should be remanded for a new trial; and alternatively that landowners are entitled to severance damages in the amount of $2,258.00.
We will first consider the above numbered assignments of error.
Plaintiff Michigan Wisconsin Pipe Line Company is a natural gas company as defined by Title 15 U.S.C.A. Section 717(a) and (b), and is authorized to do business in the State of Louisiana. It is the holder of a Certificate of Public Convenience and Necessity from the Federal Power Commission in accordance with *743 LSA-R.S. 19:1 et seq.[1] This authorizes plaintiff to expropriate property in the State of Louisiana. Furthermore, it is well established that defendants forfeit their defense to the taking of the servitude when they fail to file answer within 10 days after service of process. LSA-R.S. 19:6 and 7. Texas Gas Transmission Corporation v. Sigue, La.App.3rd Cir., 163 So.2d 386. Here answer was not filed until approximately 50 days after service on all defendants.
As to the second numbered complaint, defendants direct our attention to the fact that the citation served on each defendant contains no specification as to the number of days that defendant had to file answer. The citation reads as follows:
"You are hereby notified that, by order of the Court, the trial of the above entitled and numbered cause has been fixed for June 25, 1968, at 10:00 o'clock, A.M. St. Martinville, Louisiana.
Certified copy of the Plaintiff's petition and certified copy of the order fixing the time of the trial accompanies this citation.
Your answer should be filed and a copy thereof served on Plaintiff's attorneys of record, Burt W. Sperry, c/o Shotwell, Brown & Sperry, 708 Ouachita National Bank Building, Monroe, Louisiana 71201, and EARL H. WILLIS, 106 West Berard Street, St. Martinville, Louisiana 70582, all in accordance with law.
 James A. Theriot
 Dy. Clerk of Court
Date: April 29, 1968."
Defendants entire argument on this point by brief is that "This (citation) does not comply with R.S. 19:6 and 7 when read in conjunction with Articles 1202 and 1001 of the Louisiana Code of Civil Procedure. Defendants' answer was filed timely and all defenses should be considered."
In Texas Gas Transmission Corp. v. Sigure, supra, writ refused 246 La. 580, 165 So.2d 480, we specifically held that Article 1001 of the Code of Civil Procedure did not repeal R.S. 19:6. Defendant has not suggested in what manner the citation failed to comply with Code of Civil Procedure Article 1202.
The contention that defendants are entitled to a jury trial has been specifically considered and overruled in the cases of Tennessee Gas Transmission Co. v. Williams, La.App.2nd Cir. 1953, 65 So.2d 414.
On the 4th numbered assignment of error, defendant contends that the trial judge erred in holding inadmissible a right-of-way agreement whereby plaintiff paid $4,000 in July of 1964 to the owner of a Subdivision which was being developed, for a servitude to install a 20-inch pipeline, which 20-inch pipeline also crossed these defendants' property. The servitude involved in the 1964 transaction was approximately *744 20% longer than that which is the subject of this taking. In this instance, the trial judge allowed the document placed in the record, "burdened with the objection" and stated in effect that he would not give any weight to this evidence.
The instrument was admissible and the trial court should have considered this evidence along with all other evidence. Gulf States Utilities Co. v. Norman, La. App.3rd Cir. 1966, 183 So.2d 421 at 427, writ refused 249 La. 120, 185 So.2d 529. See also Florida Gas Transmission Company v. Munson, La.App. 1st Cir. 1967, 198 So.2d 750 at 755, 756; writs refused 250 La. 981, 200 So.2d 666.
There appears to be no complaint concerning the amount of damages awarded for the servitude taken, for all experts were in substantial agreement with the $550.00 which was awarded by the trial judge as damages to the part taken. The remaining issue concerns the refusal of the trial court to award severance damages.
Defendants' 37 acre tract of level, well drained land, which all experts agreed was ideally suited for rural homesite property, fronts 4,250 feet on a Parish gravel road which runs essentially east and west. The property has a depth of 400 feet. The western end of this property abuts the railroad across which is located a high school, a primary school, and an elementary school. Only a short distance away there is a church, post office, bank, shopping area, and a fire station. This property adjoins on the south the property of Sugarland Development Corporation which is now being developed as a residential subdivision. The area is a fast developing rural area densely populated with rural homesites with good new construction activity. A review of the maps attached to the appraisers' reports shows approximately 2 square miles. This indicates that almost every road in the entire two square mile area has numerous homes fronting the road, with the exception of this and the Angelle properties, both of which are similarly situated and are involved in these expropriation suits.
Defendants' property is already burdened with a 25-foot wide pipeline servitude on which is located a 20-inch pipeline owned by this same plaintiff. This 20-inch pipeline servitude is located about the middle of the property measured east and west and crosses at a slight angle for a distance of approximately 431 feet. This taking parallels the old servitude and is located to the west of and adjacent to the old servitude. The new servitude is for a 30-inch pipeline and after construction reverts to a width of 30 feet by a distance of 431 feet which affects a total of 0.297 of an acre. According to the petition and the judgment granting the servitude, plaintiff's rights on the property are subject to the following restrictions:
"A. Whenever it becomes necessary for Plaintiff, or its agent or contractor, to cross a fence, at all times a proper enclosure will be maintained and said fence will be restored as promptly as possible to as good condition as it was prior to the crossing.
"B. The pipeline shall be buried to a depth of not less than 30 inches measured from the top of the pipe to the average leve of the original ground on the two sides of the ditch in which the pipeline is laid, and all ruts and depressions caused by construction operations shall be levelled within a reasonable time after completion of the laying of such line.
"C. Plaintiff shall remove all stakes or posts which may have been put into the ground and generally restore the surface of the land to as nearly its original condition as may be practicable.
"D. Plaintiff shall have the right to place only one pipeline under the right of way and easement.

*745 "E. The right of ingress and egress hereinabove referred to and sought herein shall be confined to the right of way and easement above described and existing public roads on the above described lands of Defendant.
"F. Plaintiff shall never have the right to locate above-the-ground installations on or fence the whole or any part of the said easement, but Defendant shall have the right to fence the whole or any part of the boundaries thereof, and/or to build cross-fences.
"G. Defendant shall have the right to place along, across and over said right of way and easement as many roads, streets, sidewalks, passageways, electric light and power lines, water lines, sewer lines, gas lines, telephone poles and telephone lines, and any and all other utilities as said Defendant may desire, provided, however, that if the same are placed along, as distinguished from across said easement, they shall not be placed over the pipelines, of Plaintiff.
"H. After the completion of the construction, clean-up and restoration operations, plaintiff shall have no further rights to the temporary working space (a 75' wide servitude) and its rights shall be limited solely to the permanent right of way * * *"
Plaintiff's experts were Mr. Allen J. Angers, M.A.I., Member, American Institute of Real Estate Appraisers, a well qualified realtor and appraiser, and Mr. Maurice Chappuis, a well qualified real estate appraiser, both of Lafayette. They were employed by plaintiff to make the appraisal and worked together to get the factual information. Each worked separately to make his own report. Neither has ever bought or sold property in St. Martin Parish, and Mr. Chappuis has no experience in buying and selling real estate as an agent. Mr. Angers testified that he was not then engaged in the business of buying and selling real estate.
Defendants' experts have not attended the impressive schools on real estate appraising, as have plaintiff's experts, but both have experience in buying and selling real estate in St. Martin Parish. Mr. Jessie J. Guidry has a General Insurance and Real Estate Agency with offices in Cecilia. He is experienced in purchasing subdivision property and in selling lots therein, and is the general agent of Sugarland Development Corporation with land holdings and subdivision developments in various parts of St. Martin Parish, one of which adjoins this property. Defendants' other expert, Mr. Preston J. Babineaux of Lafayette, is a member of National, State and Local Realtor Boards, and has been in the business of developing land and appraisals since 1960. He too has bought and sold properties in St. Martin Parish and has experience selling lots in his subdivision in St. Martin Parish adjacent to pipelines.
Both plaintiff's experts were of the opinion that the presence of a 30-inch pipeline had no effect on the merchantability of rural homesite properties. Mr. Angers cited his three day research on the problem, most of which was related to a study of the route of an 8-inch United Gas transmission line located in the City of Lafayette. He found that many office buildings, apartment complexes and fine homes were built adjacent to the conspicuously marked pipeline. Additionally, he cited the fact that a 20-inch pipeline traverses the Bonin property only 25 feet from the location of this 30-inch line, and suggested that no additional severance damages would accrue. Furthermore, he pointed to the subdivision near defendants' property which was burdened with the same 20-inch pipeline. There the subdividers had made a boulevard such that paved streets were along both sides of the *746 pipeline. He found that lots fronting the boulevard had sold just as well as the back lots.
Both experts for plaintiff admitted that there are people who fear pipelines, but each asserted that most people in the Vermilion, Lafayette and St. Martin Parish area were not concerned about the proximity of their homes to gas transmission lines. Therefore, in these parishes, they contend that the fear that a few prospective rural homesite buyers hold toward the possible dangers presented by a gas transmission line, has no effect whatever on the marketability or price which can be obtained for that property.
All experts agreed that the property should be valued as ideal rural homesite lots. Mr. Angers' per acre value was set at $1515 while Mr. Chappuis appraised it at $906.25 per acre. Both defendants' appraisers set a per acre value of $2,500.00. All justified their appraisals on comparables which had to be adjusted to compensate for the slight differences in the properties.
Counsel for defendants contend that severance damages were proved and cites recent pipeline explosions and the resulting publicity; the fact that the company refuses to give information concerning possible dangers related to property operations; and the fact that there are no minimum standards for the installation of such pipelines as noted by the Secretary of the Department of Transportation, Hon. Alan S. Boyd, who stated at a Senate Hearing on April 19, 1967, that:
"There is no authority over the design and construction of (transmission) pipelines and no authority over the continued safety of pipelines once they are in the ground."
He further stated at the same hearing:
"According to the 1966 survey by the Federal Power Commission, which this committee caused to be printed, the casualty rate for accidents involving 30-inch pipe is more than six times as great as 20-inch pipe."
It was also noted in the evidence that the strength of the 30-inch pipe used in construction varied according to the population density near that portion of the line. They did not elaborate on how they allowed for future growth. And in this connection, it must be noted that there are no homes presently on the subject property, but all agree that the property is ideal for rural homesite property.
Both defendants' experts gave impressive testimony concerning their personal experiences in dealing with prospective customers and noting their reaction to the proximity of the property to high-pressure gas lines. Both were convincing that while there are prospective purchasers who will purchase properties near these lines, proximity to the line depresses the price that might otherwise be obtained, and many potential purchasers will not consider purchasing property located near the pipeline. They were of the opinion that this reduction in value extended for a distance of 250 feet on both sides of the servitude and therefore severance damages should be allowed for 4.3 acres.
Both defendants' experts assessed severance damages as $2,258.00 calculated as follows:

4.3 acres @ $2,500 per acre 10,750.00
 less 30% devaluation for 20-inch line 3,225.00
 ---------
 VALUE BEFORE SEVERANCE DAMAGES 7,525.00
30% severance damages for this 30-inch line $ 2,258.00

*747 The trial court denied severance damages on the grounds that these were speculative and remote, particularly since the evidence on this point was conflicting. Furthermore, he stated:
"Assuming for the sake of argument, that property owners of properties such as are involved herein actually suffer severance damages or diminution in the value of the land lying beyond the limits of the right of way sought when a pipeline or pipelines are laid over and across their properties as in these cases, the severance damages it would seem actually occur when the first line is laid, especially when, as in these cases, the pipelines will only be twenty-five (25) feet apart."
We do not follow this line of reasoning. Instead, we are of the opinion that a second pipeline substantially increases the severance damages suffered. Particularly is this true when the first line was but a 20-inch line and the second a more potentially dangerous 30-inch line. Furthermore, as noted in the testimony, the fact that a second line is needed by the same plaintiff gives cause for thinking that there may later be a third and fourth taking, which in and of itself would depress the value of adjoining rural homesite properties. For cases allowing severance damages where an additional pipeline servitude is taken adjacent to another pipeline, see Trunkline Gas Company v. Verzwyvelt, La.App.3rd Cir. 1967, 196 So.2d 58, Writ refused 1967; Veillon v. Columbia Gulf Transmission Company, La.App.3rd Cir. 1966, 192 So.2d 646.
We find that defendants have carried the burden of establishing that the Bonin property has sustained severance damages and that the basis used by defendants' experts for computing the amount of damages is convincing and sound. However, we cannot disregard the testimony of plaintiff's experts as to the per acre value of this property. Considering the comparables and reasons assigned for the respective opinions of all four experts, we hold that the fair market value of the property as of the date of the taking was $2,000.00 per acre. Severance damages are computed as follows:

4.3 acres @ $2,000 per acre $8,600.00
 less 30% devaluation for 20-inch line 2,580.00
 ---------
 VALUE BEFORE THESE SEVERANCE DAMAGES $6,020.00
30% severance damage for this 30-inch line $1,806.00

For these reasons the judgment of the trial court is amended to award additional damages in the amount of $1,806.00 as severance damages related to the taking of the 30-inch pipeline servitude. Defendants are entitled to interest at the rate of 5% per annum from June 19, 1968 until paid, and court costs are assessed to plaintiff-appellee.
Amended and affirmed.
HOOD, J., dissents, being of the opinion that the judgment appealed from is correct.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] Defendants contend that the record in this case does not contain proof that the Federal Certificate was issued. While this case was not consolidated with the companion case of Michigan Wisconsin Pipe Line Co. v. Angelle, 217 So.2d 748, either for trial or appeal purposes, these two cases were tried on the same day and arguments on appeal were heard the same day. The two cases were submitted on basically the same evidence. The record in Angelle contains a copy of Federal and Louisiana Certificates showing that plaintiff has authority to expropriate gas line servitudes. In Angelle the record of this case was offered in evidence. At the close of testimony in Angelle (which was the 2nd case tried) plaintiff moved to reopen this case to introduce the same documents. Defense counsel objected and the trial court did not rule. We hold that the trial court should have reopened this case and allowed introduction of the above referred to exhibits which are presently before us in Angelle.