221 So.2d 593 (1969)
MICHIGAN WISCONSIN PIPE LINE CO., Plaintiff and Appellee,
v.
SUGARLAND DEVELOPMENT CORPORATION, Defendant and Appellant.
No. 2651.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1969.
Rehearing Denied May 7, 1969.
*594 J. Burton Willis, St. Martinville, for defendant-appellant.
Shotwell, Brown & Sperry, by E. C. Stout, Monroe, and Earl H. Willis, St. Martinville, for plaintiff-appellee.
En Banc.
TATE, Judge.
The plaintiff is constructing a high-pressure natural gas transmission pipeline. This new line is to be constructed 25 feet west of an existing line of the plaintiff company's. By the present proceedings, the company sues to expropriate a permanent servitude for an additional pipeline right of way 30 feet in width (5 feet of which overlapped the previous line's servitude).
The defendant landowner (Sugarland) appeals from judgment granting the servitude and fixing the compensation due for it. The chief issue of this appeal concerns whether severance damages to the remainder of the tract will be caused by the construction of this second pipeline.
Consolidated with the present suit for trial and appeal was a proceeding to expropriate a similar servitude upon the Angelle tract across the highway. We will discuss all issues of both appeals in this opinion, rendering only a separate decree in the companion suit. See Michigan Wisconsin Pipe Line Company v. Angelle, La. App., 221 So.2d 598 (rendered by us this date).
The subject property is situated near Cecilia, in a thickly settled area of St. Martin Parish. All five appraisers agreed that the highest and best use of the property is for rural homesites and potential subdivision use, with its frontage on the blacktop highway especially valuable.
The landowners' appraisers produced comparable sales showing a value for homesite purposes of $3,000 to $3,500 or more per acre. The condemnor's appraisers, while agreeing the front land might be more valuable, thought the overall value about $1,000 per acre. However, even these latter appraisers used as comparables lots sold from the rear of the Sugarland tract at an acreage valuation in excess of $3,500.
The principal difference between the plaintiffs' and the defendants' appraisers is that the former base their opinion on comparable sales of 20 to 40 acre tracts rather than on sales of less than an acre. On the other hand, the defendants' appraisers were more impressed with sales of tracts of less than an acre for rural residential purposes.
The defendants' approach is applicable to the instant cases. The plaintiff is expropriating tracts of less than one acre in an area where property is ideally suited for rural homesites. To apply per-acre value of 20 to 40 acre tracts simply because *595 these defendants own a tract of 20 to 40 acres is to ignore the fact that plaintiff is taking approximately a half-acre from one defendant and a quarter-acre from the other of land with highest and best use being for rural residential purposes. Sales of tracts of this size in an area where property is suitable for homesites are more in point.
In arriving at a valuation of the acreage granted for the servitude, the trial court awarded Angelle $750 for his .285 acres taken, which amounts to $2,630 per acre. Sugarland was awarded $750 for its .544 acres taken, which amounts to only $1,400 per acre, chiefly because the eastern end of Sugarland's servitude ran into the less valuable deep interior of the tract.
The amounts so awarded for the servitudes were close to the worths estimated by at least three of the appraisers (with, however, Sugarland's servitude being valued at $1,000 by its appraisers). No substantial contention is made as to error in these awards.
Severance Damages
However, the trial court disallowed any severance damages. In so doing, we think our trial brother fell into error.
The trial court apparently accepted the testimony of the expropriator's experts that pipelines did not cause depreciation in market value of residential property traversed by them. These experts' views seem to have resulted from a study by them of market value effects of an 8-inch consumer line in Lafayette.
The present expropriation, however, is for a 30-inch high-pressure (1,000 pounds per square inch) transmission pipeline, including a 30-foot wide right of way area alleged to have been necessary for maintaining and operating it. The landowners' experts testified that the presence of this additional pipeline depreciated further the property immediately adjacent to it, just as the first pipeline had previously done so to a lesser degree. These real estate experts were actually experienced in handling sales of land in St. Martin Parish. Based upon such experience in actually selling land in the vicinity, they felt that each high-pressure pipeline depreciated the value of nearby land by 30%.
The record reflects the landowners' attempt to prove the cause of this depreciation as being the danger of explosion of the high-pressure pipeline, as well as the restriction of land-use by this lengthy strip running diagonally across land having subdivision or homesite use as its destination. The landowner also unsuccessfully attempted to have the lower court take judicial notice of government reports (the Federal Trade Commission, a message of the President of the United States, etc.) indicating the danger of these high-pressure pipelines and that, for instance, 30-inch pipelines are six times as dangerous as 20-inch ones.
In the light of these appraisers' testimony, we think it is reasonable to conclude that land burdened with a high-pressure gas pipeline is less desirable for residential purposes than is land not so burdened, and that land burdened with two high-pressure pipelines is less desirable than land burdened with only one. In the latter case, there is twice as much danger of explosion and possibly twice as much use of the nearly doubled surface area servitude obtained by the company as being necessary for maintenance and operation of the line. In each instance, because the properties are less desirable than before it burdened with one pipeline or additionally burdened with a second, the market (number of prospective buyers) is reduced, and so the price must be lowered to compensate for this unattractive additional hazard on or near the land.
As we stated in Texas Gas Transmission Corporation v. Hebert, La.App. 3d Cir., 207 So.2d 368, 371: "This type of severance damage, though extremely difficult of proof to any exactitude, has been almost universally *596 recognized by our courts. See Texas Pipeline Co. v. National Gasoline Co. (1943), 203 La. 787, 14 So.2d 636; Broussard, supra [Texas Gas Transmission Corp. v. Broussard, La.App. 3 Cir., 1967, 196 So.2d 620]; Texas Pipeline Co. v. Langlinais, La.App. 3 Cir., 1964, 168 So.2d 377; Texas Gas Transmission Corp. v. Young, La.App. 3 Cir., 1967, 198 So.2d 453."
On evidence very similar to that in the present record (involving, in fact, land in the immediate neighborhood of the subject property), this court recently amended a trial court award in order to add the severance damages caused by the second pipeline. Michigan Wisconsin Pipe Line Co. v. Bonin, La.App. 3d Cir., 217 So.2d 741, certiorari denied; Michigan Wisconsin Pipe Line Co. v. Angelle, La.App. 3d Cir., 217 So.2d 748, certiorari denied.
Under similar circumstances, severance damages caused by a second pipeline have consistently been awarded. Florida Gas Transmission v. Woodside, La.App. 1st Cir., 198 So.2d 716, certiorari denied; Trunkline Gas Co. v. Verzwyvelt, La.App. 3d Cir., 196 So.2d 58, certiorari denied; Veillon v. Columbia Gulf Transmission Co., La. App. 3d Cir., 192 So.2d 646, certiorari denied; United Gas Pipe Line Co. v. Nezat, La.App. 3d Cir., 160 So.2d 367, certiorari denied.
As these decisions hold, where the evidence reasonably shows that the additional pipelines causes additional loss in the marketing value in the remainder of the property after the second taking, then the landowner is entitled to an award for this additional diminution in market value as required by our constitution's provision that property owners receive compensation for any damage caused by a taking for a public purpose.
Under the present facts, this principle is applicable, and the landowners are entitled to severance damages. The preponderant expert evidence shows a 30% loss in market value was caused by the second pipeline. We will below amend the award to allow severance damages in accord with this valuation.
The Temporary Servitudes
The plaintiff company also sought a temporary (a three months) servitude for construction purposes over an additional.8413 acres of Sugarland's tract and over an additional. 427 acres of the Angelle property. This was to make up a strip totalling (with the permanent servitude area) 75 feet in width, upon which to pile soil, run heavy machinery, and perform other work. (The plaintiff is, however, supposed to restore this strip to its former condition following the completion of the work.)
The trial court awarded Sugarland $20 for its near-acre, subject to the temporary servitude, and Angelle $10 for its half-acre. The defendant landowners correctly contend these awards should be increased. One of the plaintiff's experts estimated that a fair rental for these strips (in Angelle's instance running between his house and his barn) would be about 10% of their value. Both of the landowners' appraisers estimated the fair rental value of these strips would be $100 each. We think $100 to be an appropriate award to each landowner for this item, it being 10% or less of the acreage valuation.
The trial court based its lower award upon the testimony of another of the plaintiff's experts. He suggested a rental value of $20 per acre, the same as if the land had been rented for agricultural or grazing purposes. We do not believe this to be an appropriate measure of the rental value of this residential land for this more onerous usage.
The judgment will be amended to include the increased awards for the temporary servitude.
Sugarland's Total Award
In addition to the $750 awarded Sugarland for the permanent servitude and the *597 $100 awarded it for the temporary servitude, Sugarland is entitled to severance damages computed as follows:
Based upon the trial court's valuation of the .544 acres taken for the permanent servitude at $750, we find the per acre value of the servitude on the Sugarland tract along the 788' length of pipeline to be $1,400. This actually amounts to a $2,000 per acre "fee" value, before the 30% reduction in value because of the severance damages resulting from the first pipeline. This $2,000 per acre valuation is in accord with our recent finding as to the value of land in the immediate vicinity in the above-cited Angelle and Bonin cases, recently decided.
The landowners' experts established that about 7 acres of the 42-acre Sugarland tract sustained a severance damage loss of 30% for the first 20" line and an additional 30% in value due to the second, the 30" pipeline. (This is a strip from 200-250' wide on both sides of it.) Thus, Sugarland's 7 acre tract sustained net severance damages (of 30% of $14,000 7 acres @ $2,000, or $4,200 for the first taking), of 30% of $9,800 ($14,000 less $4,200) or $2.940 for this second taking.
Therefore, Sugarland's award should be increased from $770 to $3,790 (i. e., $2,940 severance damages, $750 for permanent servitude, and $100 for temporary servitude).
Angelle's Award
In addition to the $750 awarded Angelle for the permanent servitude and $100 for the temporary servitude, the award to him should similarly be increased to allow for 30% severance damages to the adjacent property.
In his case, the trial court's award of $750 to him for the .285 acres taken across his valuable land fronting on a blacktopped road, amounts to a valuation of the servitude at $2,630 per acre, after deducting the 30% severance damages caused by the first taking. The value of this land before the first taking was approximately $3,500 per acre, which is in line with many of the comparable sales of small tracts in the area which were free of pipelines.
We accept the landowners' experts' testimony that 3.7 acres of the valuable blacktop-highway frontage of the tract's 22-arpent area would sustain the 30% severance damages caused by this second line. Thus, the first servitude reduced the value of the 3.7 acre tract from $12,950 (3.7 × $3,500 per acre) by 30% to $9,065.00, and the loss in market value of this tract due to the second taking, 30% of $9,065.00, amounting to $2,720.00 (rounded). Additionally, Angelle is entitled to $880 (rounded) severance damages for the 30% loss in market value of the frame residence, which under the evidence had a depreciated value of $2,940.
Thus, Angelle is entitled to a total of $3,600.00 severance damages, together with $750 for the permanent servitude and $100.00 for the temporary servitude, or $4,450.00 in all. Our decree in the companion suit will amend this trial award accordingly.
Other Contentions
The plaintiff landowners raise numerous other contentions of error. Although skillfully urged, they are without merit.
By their answers, both defendant landowners question the necessity of locating the pipeline at so harmful a place across their tracts. However, the courts will not interfere with the considerable discretion of the condemnor in choosing one location over another, in the absence of fraud, bad faith, or conduct amounting to an abuse of the privilege. Texas Gas Transmission Corp. v. Pierce, La.App. 3d Cir., 192 So.2d 561. Here, the condemnor's expert testified without contradiction that this new 30" "loop" line should best be located close by the preexisting 20" line, so that both lines may be interconnected at frequent intervals. Pretermitting whether *598 the answer was timely filed in one of the suits so as to permit questioning of the location, cf., LSA-R.S. 19:6, 19:7, we find no error in the trial court's granting the servitude in the location sought.
We further find no abuse of discretion of the trial court nor prejudicial error in its refusing to order discovery sought immediately before the trial, or on its requiring the plaintiff to answer only 82 of some 190 written interrogatories. The trial court has reasonable discretion to refuse or limit discovery of matters not relevant to the issues, unreasonably vexatious, or tardily sought which might delay the trial. LSA-CCP Arts. 1452, 1473, 1492. See also LSA-CCP 1436.
We also find no prejudicial error in the trial court's rulings now complained of as to the admissibility or not of evidence. Likewise, the defendant landowners are not entitled to a trial by jury, LSA-R.S. 19:4, Michigan Wisconsin Pipe Line Co. v. Bonin, La.App. 3d Cir., 217 So. 2d 741, certiorari denied, nor (in the absence of prejudice) to a remand for a retrial because of the alleged disqualification of the court reporter to serve at the trial, Hall v. St. Paul Mercury Indemnity Co., La.App. 1st Cir., 86 So.2d 751.[1] Further, the alleged insufficiency of the citation or statutory notice (LSA-R.S. 19:5), not questioned by declinatory exception, cannot be questioned on appeal. LSA-CCP Art. 925; Tenneco, Inc. v. Earhart, La.App. 3d Cir., 220 So.2d 109 (1969); Michigan Wisconsin Pipe Line Co., La.App. 3d Cir., 217 So.2d 741.
Decree
Therefore, for the reasons assigned, the judgment of the trial court is amended to increase the award to the defendant landowner for the permanent servitude and for the temporary work area, from Seven Hundred Seventy and No/100 ($770.00) Dollars to Three Thousand Seven Hundred Ninety and No/100 ($3,790.00) Dollars, together with legal interest on all unpaid amounts from the date of taking (June 7, 1968) until paid. In all other respects, the judgment of the trial court is affirmed, at the cost of the plaintiff-appellee.
Amended and affirmed.
HOOD, J., dissents, being of the opinion that the judgment appealed from is correct.
Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] The appellants do not suggest incompetence nor any default on the part of the court reporter, but they make a very strong argument that, for reasons of public confidence, opponents are entitled to have spouses of their adversaries recused from serving in the sensitive position of court reporter just as they are to have spouses of parties or of attorneys involved recused from serving as judge, cf. LSA-CCP Art. 151(4).