160 So.2d 367 (1964)
UNITED GAS PIPE LINE COMPANY, Plaintiff-Appellee,
v.
Onie Martin NEZAT et vir, Defendants-Appellants.
No. 1023.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1964.
Rehearing Denied February 18, 1964.
Writ Refused April 2, 1964.
C. Kenneth Deshotel, Opelousas, La., for defendant-appellant.
Hargrove, Guyton & Van Hook, by Ray Barlow, Shreveport, Lewis & Lewis, by Seth Lewis, Sr., Opelousas, for plaintiff-appellee.
*368 Before TATE, FRUGE and SAVOY, JJ.
TATE, Judge.
This is a proceeding to expropriate a servitude for a 30-inch natural gas pipeline. The defendant landowners appeal an allegedly inadequate award.
On an earlier appeal, we remanded the present expropriation proceedings to admit additional evidence as to the value of the property taken, as well as to permit the defendant landowners to produce proof of any severance damages. La.App., 136 So. 2d 76. After hearing further evidence, the trial court rendered judgment in the same amount ($1200) as that previously awarded for the taking itself. The trial court further disallowed any severance damages.

1. Value of the Servitude Taken.
The appellant-landowners contend that the value of the servitude taken should have been fixed higher than the $1200 awarded. The appellants rely upon certain recent sales as supporting a higher valuation. We agree with the trial court, however, that these sales do not concern comparable property. We therefore affirm the trial court's award of $1200 for the taking itself. (The plaintiff did not seek reduction of this amount by appeal or answer to the defendants' appeal.)

2. Severance Damages.
When this case was before this court on its first appeal, we remanded it for further evidence, inter alia, concerning severance damages. La.App., 136 So.2d 76, 79-80. We pointed out that a pipeline such as the present is potentially dangerous and that, under the jurisprudence, depreciation thereby resulting in the market value of the remainder of property traversed by a pipeline, is compensable as severance damages. See also Interstate Oil Pipe Line Co. v. Friedman, La.App. 3 Cir., 137 So.2d 700. We further pointed out that, in order to recover such severance damages, the defendant landowners "must effectively show the market value of the remaining property immediately before and immediately after the expropriation * * *." 136 So.2d 80.
On the remand, the trial court refused to award any severance damages. The court felt that the proof of same was too remote and too conjectural. The defendant landowners contend that this ruling was erroneous.
The plaintiff company's right of way was expropriated across a 75-acre tract owned by the Nezats, the defendant landowners. The right of way traverses the tract's western 15 acres, which comprises the only high, cleared land in it. A parish road runs all across the north of the Nezat tract, and another along its west boundary.
The high, cleared lands through which the new pipeline passed were used by the Nezats for agricultural purposes. The plaintiff company's expert, an appraiser from a neighboring parish, opined that the market value of, and severance damages to, the Nezat lands should be based solely upon their classification as agricultural lands.
However, two local realtors testifying as expert witnesses for the defendant landowners, stated positively the highest and best use of the portion of these lands fronting the road on the north, was for country homesites in the thickly settled areas near Opelousas, such as that in which the subject property was located. These realtors stated that there was a ready and a constant demand for 2½ to 3-acre homesites of this nature by residents of the area who desired the advantages of country living nearby to the city of Opelousas.
However, these realtors admitted that not many sales of these country homesites actually took place. The reason was that the owners of the farmlands near Opelousas rarely were willing to sell off their open lands fronting the roads. Both experts testified of their own unsuccessful efforts to try to locate such lands for willing purchasers (and, in fact, two lay witnesses had *369 mentioned their own unavailing search for such lands to buy, Bourque, Tr. 105, and Ledoux, Tr. 154 first appeal); both experts were positive that there was a ready market for three homesites, each 200' front x 600' and totalling 8.26 acres in all, in the good cleared high land along the road on the northern boundary of the property. Tr. 24, 42, 87, 97.
These expert realtors further stated that the effect of the new north-south pipeline crossing in the middle of these lots was to depreciate their market value a full one-half after the taking, as compared with their value prior to it.
The trial court disallowed any severance damages as speculative and remote, because these realtors also admitted that in fact within the past five years no such sales had actually occurred in the near vicinity of this property. This lack of sales should be evaluated in the light of the uncontradicted testimony of local realtors that the only reason for the lack of such sales was the unwillingness of the landowners in the vicinity to sell, even though there was a ready market of prospective purchasers willing to buy such homesites.
It is thus not speculative to base severance damages on the loss due to the taking in the market value of the road-front portion as residential homesite property, since there was a present call and a present market for it to be sold as such. The present situation is thus to be distinguished from that in Shell Pipe Line Corp. v. Lone Star Estates, Inc., La.App. 4 Cir., 127 So.2d 745, and other cases upon which the plaintiff-appellee relies.
Under the present circumstances, we think, the preponderance of the evidence in the record shows that the market value of the 8.26 roadside acres should be based upon their ready resale value as three country homesites; and also that severance damages should be computed on the basis of their loss in market value for such purposes by reason of the construction of this new high-pressure 30-inch pipeline through or in the immediate vicinity of these residential lots. The preponderance of the evidence likewise indicates that this will cause a 50% loss in the market value of these three homesites.
The plaintiff company's expert appraiser admitted that homesites might be sold along the roads. Tr. 108. He felt, however, that he could only consider the severance damages as based on the highest and best use of the entire 75-acre property (i. e., for agricultural purposes), rather than considering the loss in market value of the choice front property insofar as its best use was for homesites.[1]
The constitution provides that private property cannot be taken or damaged unless just and adequate compensation is paid. LSA-Constitution, Article I, Section 2; see Interstate Oil Pipe Line Company v. Friedman, La.App. 3 Cir., 137 So.2d 700. We find no warrant to limit our constitutional duty to award adequate compensation by adopting such a narrow formula as that suggested as the only method to compute severance damages.
Where a landowner has actually sustained severance damages as the result of a taking, we have several times computed same by reference to the before-and-after value of only the portion of the remainder suffering a loss in market value by reason of the taking. Colonial Pipeline Company v. Babineaux, La.App. 3 Cir., 154 So.2d *370 594; Coastal Transmission Corp. v. Lejeune, La.App. 3 Cir., 148 So.2d 111; Trunkline Gas Co. v. Cassidy, La.App. 3 Cir., 138 So.2d 424. When this method of computing severance damages is realistic under the circumstances, as now, we see no need for or legal authority to strait-jacket expert witnesses into testifying to severance damages according to some other formula of the courts' arbitrary choice, where either approach to computation will adequately prove severance damages undoubtedly sustained.
It is to be remembered that the expert testimony in this record indicates that the principal severance damages caused by the taking was the loss in market value for residential purposes of this road-front property, and that the loss in market value of the interior property by reason of the location of the new pipeline was relatively insignificant.

3. Value Prior to Taking of Homesites Damaged by Taking.
The expert realtors testifying for the defendant landowners, evaluated the 8.26 acres available for country homesites as worth $1200 per acre before the taking, as compared with $600 after it. This value was based upon several allegedly comparable sales, notably a sale of 3 acres in the vicinity at some $2300 per acre and another sale of 1 acre for $1000.
The plaintiff's expert appraiser, on the other hand, testified to a value of $300 per acre, based upon allegedly comparable sales of several other tracts. (By reason of recent date and nearby location, the Mouret sale of 38 acres at approximately $400 per acre seems to be the most comparable, based on the average acreage market value of the entire tract for agricultural purposes.)
The defendant landowners' experts pointed out, however, that the average per-acre of these larger tracts, which included the more valuable road fronts as well as the less valuable interior lands, is not an adequate guide to the value of the Nezat country-home roadside sites damaged by the present taking.
The comparables tendered by the defendant landowners' experts would convince us that the market value for country homesite purposes of the Nezat land along the northern road was $1000 per acre prior to the takingexcept for one circumstance: these other comparable properties did not already have a pipeline across the rear of the road-front sites, as did the Nezat land. For, prior to the taking, there was already a right of way (Texas Eastern) containing two 30-inch pipelines running east-west across the Nezat lands, which crossed a portion of the rear of at least two of the three country homesites damaged by the taking for the present north-south pipeline.
The defendants' experts testified that this prior pipeline right of way had already somewhat diminished the value of the land for residential purposes prior to the present taking. Nevertheless, being in the rear of the residential lots away from the portion fronting on the road, the prior pipelines did not in their opinion cause anything like the additional diminution in market value resulting from the criss-crossing of this area by yet another 30-inch pipeline (the present). One of the experts further noted that "naturally, the more pipelines you have, the less value to your property." Tr. 69.
Considering all the circumstances reflected by the record, we conclude that, considering the existing pipelines across the rear of two of the homesites damaged by the taking, such residential property had a value of $500 per acre before the present taking. We likewise conclude that such property had a market value of $250 per acre after taking, in accordance with the preponderant expert testimony that the additional taking caused an additional loss of 50% of the value of this property.
According to the expert testimony, therefore, there was prior to the taking a ready market for residential purposes of 8.26 acres of the Nezat land along the road; *371 after the takingsubtracting one acre for the land taken, there was only 7.26 acres available, which was diminished in value by 50%. Prior to the taking, this 7.26 acres at $500 per acre had a market value of $3630, whereas after the taking it was worth only $1815. The defendant landowners are thus entitled to $1815 severance damages for this loss in market value resulting from the taking. (Compensation has already been allowed for the value for the land included in the servitude, see above.)

Decree.
For the reasons assigned, the judgment of the trial court is amended so as to award the defendant landowners the additional sum of Eighteen Hundred Fifteen and No/100 ($1815) Dollars; as thus amended, the decree is affirmed in all other respects. The plaintiff-appellee is cast with all costs.
Amended and affirmed.

On Application for Rehearing
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] This expert also pointed to a 10-acre sale to the school board in Lafayette of land across the edges of which two pipelines crossed, as evidence that the pipelines did not cause severance damage to the remainder. In the absence of evidence as to the market value of the property without the pipelines, of course, such testimony is not very conclusive on the question; and, in fact, under cross-examination the expert admitted that the tract had sold at a value per acre approximately one-half the market value per acre of other lands in the vicinity. Tr. 113.