196 So.2d 58 (1967)
TRUNKLINE GAS COMPANY, Plaintiff-Appellant,
v.
John P. VERZWYVELT et al., Defendants-Appellees.
No. 1928.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1967.
Rehearing Denied March 21, 1967.
Writ Refused May 19, 1967.
Oliver, Digby & Fudickar, by Fred Fudickar, Jr., Monroe, Gist, Methvin & Trimble, by H. B. Gist, Jr., Alexandria, for plaintiff-appellant.
Polk, Foote & Hunter, by William P. Polk, Alexandria, for defendants-appellees.
Before TATE, SAVOY, and HOOD, JJ.
TATE, Judge.
This is an expropriation proceeding. A natural gas company (Trunkline) sues to expropriate a right of way servitude across land owned by the defendants. Trunkline *59 appeals as excessive the award to the landowners for the taking.
The principal error urged concerns the trial court's award of severance damages caused to the parent tract by the taking. Trunkline contends that none resulted because the present expropriation was for a third pipeline across the tract.
Facts.
The tract across which the pipeline right of way is taken is a 165-acre farm located between Bayou Rapides and the Red River. According to the testimony, the sandy silt land of the area is one of the most fertile soils in the world. The owners produced extremely high-yield cotton crops by mechanized farming of the major portion of the tract, raising corn on the remainder. There is no substantial dispute that at the time of the taking the market value of the tract was at least $750 per acre, valued for agricultural purposes, the land's best and highest use.
The pipeline servitude expropriated by the present proceeding is 66 feet in width. It crosses the farm somewhat diagonally across its approximate center. It includes 5 acres in total area.
The new pipeline is parallel to two previous pipeline servitudes taken in 1956 and in 1958 for similar high-pressure natural gas pipeline servitudes. All three servitudes (including 15' dead space between them, technically not taken or paid for) constitute a band of 141' wide running across the entire center width of the landowners' farm.
To construct the 36" high-pressure pipeline, Trunkline plans to dig a ditch 5½ feet deep and 5 feet wide. The digging, pipelaying, joint-welding, refilling, were all to be accomplished by multiple waves of heavy construction machinery which would utilize the entire width of the servitude.
Trunkline does not contest the trial awards for: (a) the land actually taken for the right of way; (b) the temporary work area; (c) the destruction of two barns in the right of way; (d) the actual crop loss to be caused by construction; and (e) a pecan tree to be destroyed. It chiefly contests as excessive the trial court's award of severance damages of $100 per acre for the loss in value of the remainder of the farm. Trunkline also urges that a trial award of $450 is not authorized by law for the cost of moving hay from the barns to be destroyed by the taking.
Severance Damages.
In addition to the award for the land taken, a property owner is entitled to recover damages caused by the expropriation. La.Constitution, Art. I, Section 2. These include severance damage, which is the diminution in the market value of the remainder of the parent tract caused by the expropriation and by the use to which the expropriated servitude will be put. Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So. 2d 260. In ordinary expropriation proceedings, severance damages are determined as of the date of the institution of the expropriation suit,[1] just as is the market value of property taken. Louisiana Highway Commission v. De Bouchel, 174 La. 968, 142 So. 142; Louisiana Ry. & Navigation Co. v. Sarpy, 125 La. 388, 51 So. 433; see also, State through Dept. of Highways v. Levy, 242 La. 259, 136 So.2d 35, syllabus 7.
Based on expert testimony and other competent evidence, the trial court found that the present 1966 taking would cause a substantial loss in value of the remaining 160 acres left after the taking. The trial court thus rejected testimony by the condemnor's experts that no additional severance damage will result because of this third high-pressure pipeline, allegedly since any such loss of value must have already resulted from the earlier construction in 1956 and *60 in 1958 of two other pipelines to which the present pipeline is parallel.
We find no error in the trial court's finding that the landowners' evidence preponderates. This finding of severance damage is based upon substantial evidence, including testimony by an expert in the value of agricultural lands of the parish. This evidence is to the effect that severance damages to the farm as a whole results from the laying of this third pipeline, because:
1. The new pipeline runs across and will disrupt the natural drainage of the large (about 60 acres) cotton field of the farm. Following construction, a raised ridge is left which will subside gradually; however, across the entire length of this fresh ditch and the mauled-up 66-foot width of the new right of way there will be patches and strips which will remain boggy for extended periods after rain for at least a year. Likewise, for several years (estimated as eight), there will be constantly recurring potholes and inequalities of surface; therefore, the farmer will have to constantly relevel his entire field to restore the drainage and avoid bogginess or potholes in the mauled-up area in order to permit the efficient utilization of the heavy machinery (tractors, mechanical cotton-pickers, etc.) used in the mechanical farming of the area. One of the witnesses estimated the relevelling costs at $100 to $150 per acre.
2. The fertility of the entire 66-foot wide strip is substantially reduced due to the destruction of the fertile topsoil. With heavy fertilization and constant reworking, the fertility can be restored in from five to eight years. In the meantime, however, the substantially reduced yield of the entire field due to the infertile strip will increase the unit cost of producing cotton from the entire farm.
3. The circumstance that the former servitude area (a strip 60-feet wide) had been more than doubled means that now a broad swathe of the tract, 141 feet in width and running across the center of the land for its entire length, can never be utilized for construction of any improvements, or even of irrigation or drainage ditches. In addition, the extra pipeline means that there is approximately 50% more occasion for repair and maintenance redisturbing the soil, and about the same increase in occasion for survey and inspection trips across the land by Trunkline's maintenance and safety crews to disturb the landowner's uninhibited use of his own land.
In summary, the landowners' witnesses testified that the producing-income value of the entire cotton farm was decreased by the freshly cut gash across its center. Hence, they say, the market value of the entire farm has decreased because of the new taking. Since the large cotton field is most efficiently cultivated as an entire unit by mechanized farming, the loss in fertility of the newly-wounded strip reduces the total yield of the entire field; but the reduced yield requires the same expenses of production as did the former full crop. At the same time, the most efficient use of the mechanized equipment and most efficient cultivation of the field as a whole is prevented through recurring bogginess, potholes, and the disruption of the field's natural drainage. This added overhead of producing the reduced crop is further increased by the recurring necessity of refertilizing and reworking the affected area and of relevelling the cotton field until the natural drainage and the original condition of the soil is restored.
The witnesses for the landowners also explained that the presence of the previous two pipelines were immaterial as to this additional loss in value. According to them, the land had healed from these previous pipeline constructions, due to the passage of time and to the additional expenses incurred over the years since 1956 by the landowners in order to restore their farm to present excellent condition.
Because of the factors decreasing the income potential, the landowners' experts *61 testified that as of the date of the expropriation for the new pipeline a willing purchaser would pay from $100 to $150 per acre less for the farm as a whole. These estimates were sometimes expressed in percentage losses of value of from 10 to 25 per cent of the farm's former value.
We find no error in the trial court's allowance of $100 per acre loss in value for the 160 acres not included within the present taking. This valuation is supported by expert and competent testimony apparently based on sound reason.
We think that the award is in accord with others in the jurisprudence made for additional severance damage caused a parent tract by a new expropriation for a pipeline additional to others previously laid across the land (Veillon v. Columbia Gulf Transmission Co., La.App. 3 Cir., 192 So.2d 646; United Gas Pipe Line Co. v. Nezat, La.App. 3 Cir., 160 So.2d 367, certiorari denied), and with those based upon percentage loss in market value of an entire large tract caused by expropriation of a utility servitude disrupting or inhibiting the land's most efficient use (Gulf State Utilities Co. v. Heck, La.App. 1 Cir., 191 So.2d 761, certiorari denied; Central Louisiana Electric Co. v. Fontenot, La.App. 3 Cir., 159 So.2d 738, certiorari denied; Tennessee Gas Transmission Co. v. Primeaux, La.App. 1 Cir., 100 So.2d 917, certiorari denied).
In contending to the contrary, Trunkline cites several decisions. They concern instances where a percentage loss in value was arrived at by the trier of fact without competent or expert testimony indicating this to be an appropriate method of computing severance damage, Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260, or where competent expert testimony did not by reliable or sound reason justify an award of a percentage loss of the value of the entire parent tract to be caused by an additional utility servitude, Michigan Wisconsin Pipe Line Co. v. Peterson, La.App. 2 Cir., 192 So.2d 900, or did not even justify an award of such type of severance damage for the first utility servitude taken, Louisiana Power & Light Co. v. Pipes, La. App. 2 Cir., 188 So.2d 639, Louisiana Power & Light Co. v. Greenwald, La.App. 2 Cir., 188 So.2d 618, certiorari denied. We do not find these decisions apposite, for, as previously noted, we here find that expert testimony and other competent evidence supports the present award of severance damages under the circumstances reflected by the present record.
The appellant further contends that the award of serverance damages should be reduced so as to disallow them for the 5-10 acres included in the first two servitudes taken some eight years earlier. However, the evidence reflects that the net valuation of $750 per acre reflects the 1966 market value of the defendants' farm with the previously existing pipeline servitudes, the surface area of which had by constant reworking been restored to normal several years later by the time of the present expropriation for a third pipeline. We see no reason to disturb the trial court's computation of the net loss to the farm as a whole as including the older servitude strips, now healed into practically complete usefulness by the time of the present taking.[2]
Cost of Moving Hay.
At the time of the expropriation there were 3000 bales of hay stored in two barns which were in the path of the new pipeline. These barns were to destroyed by the taking. Trunkline does not complain of the award to the landowners for the destruction of their barns, but it does attack as unauthorized by the law the trial award of $450 for the cost of moving the hay from the barns to prevent the hay's loss too.
*62 Trunkline urges that this type of damage to property not itself taken is merely "consequential" and not recoverable in a compensation suit, as being in the nature of discomfort, inconvenience, loss of business, and the like. Trunkline cites Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40, where no recovery was allowed for the cost of moving a business from an expropriated store to another site.
The argument is forceful. Also, on a similar theory that the loss is merely "consequential", awards have been disallowed for weather damage sustained by movable property indirectly due to the expropriation, State Through Dept. of Highways v. Henderson, La.App. 3 Cir., 138 So.2d 597, or for the cost to a non-landowner of moving his gasoline pumps from the expropriated land, State Through Dept. of Highways v. Johnson, La.App. 3 Cir., 168 So.2d 389.
However, as pointed out by an authoritative treatise, "* * * all damages must of necessity be consequential since all damage is the consequence of an injurious act. * * * The distinction [in regarding damages as compensable in expropriation proceedings or not] seems to be between less and more remote damages and, in the last analysis, seems to be purely a matter of degree." 2 Nichols on Eminent Domain, Section 6.4432 (3rd ed., 1963).
The cited decisions disallowing recovery of moving costs involved, generally, consequences of a taking for which compensation would not have been paid if the sale of the servitude had been a willing buyer-willing seller type of transaction. To the contrary, the present damages to preserve the hay from destruction through the taking are more similar to damages for the costs of restoring or preserving the usefulness of expropriated property or its accessories, for which the landowner is ordinarily compensated in an expropriation proceeding when they result from the taking. See, e. g.: City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349 (cost of refencing and of placing sidewalks); Gravity Drainage District v. Key, 234 La. 201, 99 So.2d 82 (cost of building culverts to restore access); State Through Dept. of Highways v. Burleigh, La.App. 3 Cir., 160 So.2d 782 (cost of building driveways across ditch); Texas Gas Transmission Corp. v. Fuselier, La.App. 3 Cir., 133 So.2d 828, 838 (cost of relevelling land, and also cost of removing and relocating relief pump in or very near to new pipeline right of way).
We therefore find no error in the trial court's allowance to the landowners of the $450 damages sustained by them because of the cost of moving their hay directly caused by the expropriation.
Decree.
For the reasons assigned, we affirm the trial court's award in all respects. The costs of this appeal are to be paid by Trunkline, the plaintiff-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.
CULPEPPER, J., recused.
NOTES
[1] However, in highway "quick-taking" proceedings, LSA-R.S. 48:441-48:460, the statutory measure of severance damages is determined as of the date of the trial. LSA-R.S. 48:453.
[2] The trial court did not allow severance damage for the five acres taken for this third pipeline servitude. Tennessee Gas Transmission Co. v. Primeaux, La.App. 1 Cir., 100 So.2d 917. Compensation for them was of course awarded as the market value of the taking of the servitude.