PRICE, Judge.
Columbia Gulf Transmission Company, a natural gas company transporting gas in interstate commerce for public consumption, brought this action, in accordance with Title 19 of the Louisiana Revised Statutes of 1950, to expropriate a pipeline servitude across lands of C. J. Grayson, Inc., in Franklin Parish.
Plaintiff seeks a permanent servitude of a thirty foot width adjacent and parallel to two other lines previously constructed across defendant’s land. In addition, a construction servitude of a seventy-five foot width is sought which would be decreased to the thirty foot permanent servitude after completion of the line. A one-tenth acre tract is requested for installation and maintenance of a ground valve site. The lands of defendant, across which the servitude is requested, comprises 344 acres, and are situated some twelve miles south of Winnsboro and two miles north of Fort Necessity. The servitude proposed has a length of 334.4 rods. The permanent right-of-way sought comprises 3.65 acres, and the acreage to be used temporarily in construction contains 5.83 acres.
After trial of the expropriation proceedings, the trial judge rendered judgment awarding plaintiff the servitude as prayed for, conditioned on the payment to defendant of the sum of $21,342.50 for the value of the servitude taken, severance damage to the remaining property, and damage to growing crops.
Defendant filed a motion to dismiss the devolutive appeal perfected by plaintiff to this court, basing his motion on the following grounds:
(1). That plaintiff obtained all the relief asked for in the prayer of its petition, and, therefore, has no right to appeal.
(2). That if the judgment complained of is a divisible judgment and plaintiff only complains of a portion of same, then, under the law and jurisprudence, he must specify the portion complained of.
(3). That the plaintiff has acquiesced in the judgment by taking possession of the property expropriated and has paid the amount ordered in the judgment to defendant without reservation of any right to appeal.
Defendant relies on the provisions of Article 2085 of the Code of Civil Procedure, which reads as follows:
“An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment.”
In addition, defendant cites several cases of the Supreme Court holding that a party in whose favor a judgment has been rendered, in strict accordance with his own prayer, cannot appeal; State ex rel. John T. Moore Planting Co. v. Howell, 139 La. 336, 71 So. 529 (1916).
We do not find any merit in defendant’s motion to dismiss. An expropriation proceeding is an unusual action that has been provided for by special statutes. Title 19 of the Louisiana Revised Statutes of 1950 sets forth the procedure to be followed by an expropriating authority who must draft his petition in accordance with this statute. This statute requires that a petition for expropriation must end by praying that the property be adjudicated to plaintiff upon payment to the owner of the amount of just compensation decided by the court. All judgments in favor of the expropriating authority would, therefore, be in accordance with the prayer of the petition. In this same title of the Revised *153 Statutes the Legislature recognized the right of the expropriating authority to appeal to contest the amount awarded for just compensation.
Title 19, Section 13 of the Revised Statutes, and Article 2634 of the Louisiana Civil Code expressly provide for appeals in these cases, as follows:
Title 19, Sec. 13.
“No party to any expropriation proceedings shall be entitled to or granted a suspensive appeal from any order, judgment, or decree rendered in such proceeding, whether such order, judgment, or decree is on the merits, exceptions, or special pleas and defenses, or any or all of them. The whole of the judgment, however, shall be subject to the decision of the appellate court on review under a devolutive appeal.
“When a devolutive appeal is taken by either party, payment to the owner of the amount awarded by the trial court, or the deposit thereof in the registry of the court, entitles the plaintiff to the property described in the judgment in the same manner as would a voluntary conveyance. If any change in the amount awarded is made on such appeal, the plaintiff shall pay the additional assessment or recover the surplus paid.”
Article 2634 of the Louisiana Civil Code:
“Any appeal to the Supreme Court from the verdict of the jury and judgment of the lower court, made by either party, shall not suspend the execution of such judgment, but the payment of the amount of the verdict by the company to the owner, or the deposit thereof subject to the owner’s order, in the hands of the sheriff, shall entitle the corporation to the right, title and estate of the owner in and to the land described in the petition in the same manner as a voluntary conveyance would do. But in the event of any change being made by the final decree in the decision of the cause, the corporation shall be bound to pay the additional assessment, or be entitled to recover back the surplus paid, as the case may be.”
In the case of Louisiana Power and Light Company v. Mosley, 18 So.2d 210 (Ct.App.2d Cir., 1944), this circuit, in ruling on a similar issue, dispelled the argument of the appellee as follows:
“The deposit with the sheriff of the amount of the jury’s award and payment of all costs of suit did not and could not constitute acquiescence in the judgment. This course is expressly authorized by Article 2634 of the Civil Code if the plaintiff in a case of this kind desires to, prior to hearing on appeal, take possession of the land involved therein. If the award is increased or decreased on appeal this law provides what shall be done in either event. In New Orleans, Fort Jackson & G. I. Railroad v. Mrs. Ada McNeely, 47 La.Ann. 1298, 17 So. 798, this question was considered. The court disposed of it tersely by saying: ‘The effect of the deposit by the corporation is to pass title from the owner to the corporation. It does not relate to the right of appeal. It remains unaffected by the deposit.’ ”
We do not find any intent by the enactment of the Code of Civil Procedure to repeal the existing special statutes providing for appeals.
Article 2081 of the Code of Civil Procedure, under the title of Appeals, reads as follows:
“The provisions of this Title are applicable to all appeals to the supreme court and the courts of appeal, except as otherwise provided by law.” (Emphasis supplied)
We, therefore, are of the opinion that appellee’s motion to dismiss the appeal cannot. be sustained.
*154 The record reflects that the trial judge arrived at the total just compensation award of $21,342.50 in the following manner :
For permanent servitude, 3.65 acres at $500.00 per acre times 50 percent $912.50
Rental for temporary work area:
5.83 acres for a period of 90 days at rate of $75.00 per acre per annum $112.50
Damage to growing crops 3,000.00
Value of Vioth acre for valve site 500.00 Severance damages:
336.35 acres at $500.00 per acre times 10 percent 16,817.50
The appellant has assigned as error the finding of the trial court that the remainder of defendant’s property suffered any depreciation in value by virtue of the construction of the pipeline under the servitude taken and the method adopted by the court in arriving at the severance damage. Appellant also complains that the court erred in fixing the value of the l/10th acre for the valve site.
We shall first discuss the issue of severance damages. The evidence discloses that most of this 344 acre tract was used by defendant in its extensive farming operation in this area. Defendant primarily is engaged in the growing of cotton by mechanized means and with the utilization of an irrigation system on the tract involved herein. Although the expert witnesses supplied by plaintiff and defendant disagreed on the per acre market value of this tract at the time of the expropriation, the appellant has not complained of the per acre value accepted by the court of $500.00 in arriving at the, award for the area taken for the permanent servitude. The real dispute between the parties is whether the installation of the third pipeline adjacent to and parallel with the two already existing lines has caused any further depreciation in defendant’s remaining acreage in this tract.
The trial judge made a finding that the remaining acreage had been depreciated on a percentage basis of 10 percent of its market value. He apparently accepted the lowest estimate of the defendant’s two expert real estate appraisers, Charles I. Watson and J. R. Donnell. These witnesses each resided in Franklin Parish and were familiar with sales of agricultural lands in that parish for many years. Each was of the opinion that not only the existence of a third pipeline, but the attendant disruption of the farm operations on the entire 344 acre tract for a period of several years would cause the property to sell for a lesser sum if it were placed on the market immediately after exercise of the servitude. Their estimates of depreciated value were ten and twenty percent.
Appellant attacks the weight of the opinions of these experts as being without proper legal foundation as neither could testify that their opinion was based on any sales known by them of lands on which three pipelines existed, and the market value had been affected adversely by the presence of the lines. Appellant urges that the evidence preponderates in its favor that no damage occurred to the parent tract by installation of the third line. Reliance is had on the testimony of Wayne Medley and Howard H. Garrett, real estate appraisers of Monroe, Louisiana, who testified no severance damage occurred because of the construction of the line. As a basis for their conclusions each used certain sales found by them of properties on which multiple pipelines existed. Plaintiff also produced testimony of several farmers who had lines constructed on their farms and were not affected in the operation of their farm by the presence of the line once the soil became level and firm.
C. J. Grayson, principal stockholder and manager of the defendant corporation, testified as to the adverse effect the additional pipeline and its construction would have on his farming operations. Although he is an interested party in the outcome of this *155 action, his testimony regarding his method of operation of his highly mechanized farm must be given proper weight. He testified as to the difficulties experienced in the farming operation for a period of several years after the construction of the two existing lines on his property. These matters are not in the realm of speculation but are logically to be expected as a result of the construction process of a large 36 inch high pressure line.
That additional severance damage may accrue to the parent tract by construction of an additional gas pipeline on tracts already burdened with existing lines has been recognized by the following cases: Trunkline Gas Co. v. Verzwyvelt, 196 So.2d 58 (Ct.App., 3d Cir., 1967); Veillon v. Columbia Gulf Transmission Co., 192 So.2d 646 (Ct.App., 3d Cir., 1966); and United Gas Pipe Line Co. v. Nezat, 160 So.2d 367 (Ct.App. 3d Cir., 1964).
Also, the propriety of using the percentage of loss of market value for arriving at severance damage to the whole tract by expropriation of a utility servitude disrupting or disturbing the land’s most efficient use has been approved in these cases: Trunkline Gas Co. v. Verzwyvelt, supra; Gulf State Utilities Co. v. Heck, 191 So.2d 761 (Ct.App. 1st Cir., 1966).
An expert witness may give his opinion of factors affecting the market value of a tract of land without being required to find a sale involving identical conditions to prove his conclusion.
It would indeed be a rare situation to find another transaction that had previously occurred wherein all physical characteristics and circumstances surrounding the market conditions were identical to that under study. Although plaintiff’s experts believed they found sales suggesting the existence of pipelines did not reduce the market value of agricultural properties, there is no certainty that an appreciation of land values, in general in recent years, had not offset the reduction caused by utility servitudes in the particular sales relied upon.
We are of the opinion that the trial judge had sufficient competent evidence on which to base his conclusion that the parent tract had suffered a loss in market value by the construction of the third line. The case of Trunkline Gas Co. v. Verzwyvelt, supra, had almost the identical issues presented therein as are involved here. The court in that case reviewed a trial court’s judgment allowing severance damages on a percentage basis where the pipeline servitude caused serious disruption of an efficient mechanized farming operation similar to the one under consideration in this case. The appellate court stated that the record contained ample evidence to preponderate in favor of the landowner’s claim for a loss of $50.00 per acre of the entire tract.
In the case herein under review, we believe the testimony of defendant’s expert witnesses, coupled with his own evidence depicting a highly mechanized operation which has produced a very high yield of cotton per acre for many years, proves some depreciation in market value. It is inescapable that the construction of a third line would not cause some detrimental effect to the full utilization and enjoyment by defendant of its property for its farming operations. However, we do not believe that the testimony of Watson and Donnell sufficiently establishes that the entire tract has suffered a loss in market value as great as 10 percent. According to the evidence, defendant may continue to use the area of the servitude for farming, although it may take time to restore it to its former condition of fertility and productivity. We believe that a minimum depreciation of five percent of the established per acre value of $500.00 would be sufficient to fully compensate defendant under the facts of this case.
The second complaint of appellant that the trial judge was excessive in *156 awarding $500.00 for the 1/lOth of an acre to be taken as a permanent servitude for a valve site is well founded. The court, having found the full fee value of a whole acre was $500.00, should have only awarded l/10th of this amount for l/10th of this area. The full fee value of the land taken is all that defendant is entitled to.
Defendant has answered the plaintiff’s appeal, asking this court to increase the award made by the trial court of 50% of the full fee value for the 3.65 acres comprising the permanent servitude to 100 percent of the $500.00 per acre value found by the court. The jurisprudence has recognized that in servitudes for gas pipelines where the use of the surface may be retained by the landowner, an award of a percentage of the full fee value is appropriate. We can find no error in the court’s finding in this regard.
Defendant also asks the court to allow the sum of $5,110.00 necessary to build bridges and roads to provide access to an area of its property allegedly cut off from the public road by the pipeline construction. This sum was rejected by the trial judge. We do not find that the evidence sufficiently establishes that defendant could not cross the construction work area during construction of the line, and afterwards with a minimum of inconvenience.
The defendant further requested that we review the refusal of the trial judge to allow the sum of $15,000.00 for loss of an estimated 75 bales of cotton which defendant would suffer by a loss of fertility of the soil for a period of three years on 60 acres of its land caused by the construction. We can find no error in the trial judge’s refusal to allow this item of damage as being too speculative to be a basis for an award of damages.
For the foregoing reasons it is ordered that the judgment appealed from be amended to reduce the total amount of just compensation to be paid to defendant by plaintiff to the sum of $12,483.75, and as amended the judgment is hereby affirmed. All costs of this appeal are to be paid by appellant.