CULPEPPER, Judge.
Plaintiff filed' this suit to expropriate a servitude for a 36-inch gas pipeline across defendants’ farm land. The district judge awarded defendants $12,773.77 for the servitude taken, severance damage and other damages caused by construction. Defendants appealed, seeking an increase in the award. Plaintiff answered the appeal, contending the award is excessive.
The issues on appeal are: (1) The value of the servitude taken; (2) the validity and construction of a release of certain surface damages, and severance damages caused thereby, signed by defendants for a consideration of $5,500; (3) severance damages to the remaining property; (4) alleged errors by the trial judge in mathematically computing the awards; (5) the taxing of expert witness fees and other court costs to defendants.
*95 GENERAL FACTS
Defendants own a farm, known as Bush-ville Plantation, located in a thickly populated rural area about two miles south of Arnaudville and three miles northwest of Cecilia, in St. Martin Parish. It contains 1,000 acres and is generally rectangular in shape, being bound on the northeast by State Highway 686 and on the southwest by Bayou Teche. State Highway 347 crosses about the center of the property from east to west, giving a total of approximately 3.3 miles of frontage on blacktop highways. A railroad also crosses the tract. The land is flat and level and is presently in an excellent state of cultivation. There are several small tenant-type dwellings on the property, as well as a small air strip and dusting service. Previously, there were no pipelines on defendants’ land.
Plaintiff seeks to expropriate a permanent servitude 40 feet in width and about one mile in length, containing 4.28 acres. It runs generally north and south across the northwest portion of the plantation and intersects Highway 347. Additionally, plaintiff seeks a temporary working area 35 feet in width. The servitude is for a 36-inch natural gas pipeline which must be buried not less than 30 inches beneath ground level. The landowners will have the right to use the servitude subject to plaintiff’s right of ingress and egress to maintain and/or remove the line and also subject to the restriction that permanent improvements cannot be placed on the right of way. Plaintiff says its representatives will walk the right of way several times each year.
THE SERVITUDE TAKEN
Plaintiff’s expert appraisers are Mr. Dan A. Ritchey, Jr. and Mr. Maurice J. Chap-puis. They are of the opinion that the portion of the property which fronts on the blacktop highway is best suited for rural homesite development and has a value of $1600 per acre. They say the remainder of the property is best suited for agriculture, which Ritchey valued at $600 and Chappuis at $630 per acre. There is a slight difference in their appraisals as to the depth from the highway of the land suited for rural homesites, Chappuis using a depth of 200 feet and Ritchey 150 feet.
Defendants introduced the testimony of three expert appraisers, Mr. Jesse J. Gui-dry, Mr. Preston J. Babineaux and Mr. Robert A. Wolf. Guidry and Babineaux submitted a joint appraisal giving the value of the agricultural property at $675 an acre. They set the value of the rural homesites on the highway, to a depth of 900 feet on the north side and 500 feet on the south side, at the sum of $1600 per acre. Mr. Wolf valued the property as a whole at $650 per acre, without distinguishing between the portions best suited for agriculture or rural homesites.
Using these appraisals, the district judge allowed $1600 per acre for the home-sites along the highway, but used a depth of only 250 feet. The judge valued the agricultural property at $675 per acre. These findings are clearly supported by the evidence.
Plaintiff’s appraisers valued the servitude at 75% of the value of the fee. Defendants’ experts appraised the servitude at 80% of fee value and the trial judge used this percentage. We find no error here.
There is no complaint on appeal as to the trial judge’s finding that the temporary work area has a value of $500.
Summarizing, the value of the rights expropriated are as follows:
Permanent right of way
3.829 acres x $675/acre x 80% = $2,067.66
.459 acre x $1600/acre x 80% = 587.52
$2,655.18
Temporary work area 500.00
$3,155.18
THE VALIDITY AND CONSTRUCTION OF THE RELEASE AGREEMENT
The trial of this case on the merits consumed several days in January and Febru *96 ary of 1970 and was then continued for further evidence on several issues, including crop damage, the cost of releveling, fen-tilizing and other surface damage. During this delay in the trial, representatives of the pipeline company contacted one of the defendants, George Gainnie, Jr., for the purpose of compromising the surface damages in order to avoid the necessity of introducing evidence on this issue. These parties met and reached an oral agreement with the understanding it would be reduced to writing and signed and filed in the record.
On the date the trial was resumed, March 13, 1970, attorneys for the pipeline company presented the written compromise stipulation to Mr. Gainnie and his attorneys, who read it and suggested several changes, which were made. The agreement was then signed and filed in the record and reads in pertinent part as follows :
“In the interest of expediting conclusion of the trial of this case, Plaintiff and Defendants have by way of compromise reached an agreement as follows:
“For and in consideration of the sum of FIVE THOUSAND FIVE HUNDRED AND NO/lOO ($5,500.00) DOLLARS, cash in hand paid by Plaintiff to Defendants, the receipt and sufficiency of which is hereby acknowledged, Plaintiff and Defendants do hereby stipulate and agree, through their undersigned counsel, with respect to amounts which may or may not be due Defendants in a judgment of this case, that Defendants do hereby release and relinquish Plaintiff from and against any and all claims arising or which may arise out of the construction of the pipeline whether anticipated or not for the items set forth below and involved herein and that the judgment in this case shall accordingly not include any award for the following items:
“(1) Physical damage to Defendants’ land;
"(2) Loss of or cost of restoration of fertility or productivity of Defendants’ land;
“(3) Damages or losses resulting from the prevention, delay and/or accidents involving persons, machinery, equipment or other property in crossing or attempting to cross the area of the right of way and temporary working area shown on the plat attached to Plaintiff’s petition;
“(4) Losses or damages due to the compaction of Defendants’ land;
“(5) Losses, damages or costs of leveling, releving or in any manner restoring the contour of Defendants’ land;
“(6) Losses of and damages to trees, crops or other growing things on Defendants’ land, whether resulting from direct physical injury or indirectly from the consequences of Plaintiff’s construction operations, and losses and damages resulting from the inability of Defendants to have access to economically plant, cultivate, harvest or otherwise conduct agricultural operations with respect thereto; provided, however, that this item (6) does not include any damages to growing crops off of the right of way and temporary working area due to impaired drainage caused by the pipe line construction;
“(7) Losses and damages due to and/or cost of prevention and control of any weeds which may occur on Defendants’ land;
“(8) Nothing contained herein shall be construed as giving up or waiving Defendants’ claim for severance *97 damages, if any, and payment for the servitude and right of way and use of the temporary working area actually taken by Plaintiff; provided, however, that Defendants shall not have the right to make any claim for severance damages as a result of any of the foregoing specific items listed above under numbers (1) through (7).”
After the trial on the merits was completed, the attorneys for the pipeline company filed a brief in which they took the position that all severance damages resulting from the expropriation had been settled in the compromise agreement. On receipt of plaintiff’s brief, counsel for the landowners filed a motion to annul the compromise agreement on the grounds of unilateral error by Mr. Gainnie and his attorneys, or, alternatively, to reform the agreement for mutual error, i. e., that the written release did not conform to the oral agreement.
At the trial of this motion Mr. Gainnie testified that during his negotiations with representatives of the pipeline company it was his intention to settle only the crop and other surface damages, and he did not intend to settle any severance damages. He stated that 24.4 acres could not be cultivated during the year the pipeline was constructed and this crop loss was $60 per acre. Also, 69 acres had to be releveled, fertilized and reconditioned at a cost of $50 per acre. He computed as follows the $5,500 received under the compromise agreement:
”24.4 acres out of production x
$60.00/acre =$1,464.00
Rounded to $1,500.00
69 acres to be releveled, reconditioned, control grass, fertilizer x $50.00/acre =$4,140.00
Rounded to $4,000.00
Total settlement proposition,
$5,500.00 for the items described above."
The pipeline company introduced no testimony whatever to explain their understanding of the agreement. They rely on the language of the agreement itself.
The district judge construed the agreement to mean that the landowners did not compromise their severance damages. However, as will be stated hereinafter, he found as a fact that there were no severance damages to the portion of the property best suited for agriculture.
We think the district judge erred in his construction of the agreement. The final provision in paragraph 8 states “provided, however, that defendants shall not have the right to make any claim for severance damages as a result of any of the foregoing specific items listed under numbers (1) through (7).” This language is clear and subject to no other construction but that defendants have released any claim for severance damages which result from any of the seven items listed. Generally, these seven items relate to damages to the surface of the land, such as the cost of restoration of fertility or productivity, losses due to equipment being unable to cross the working area, losses due to the disturbance of compaction of the soil, costs of releveling, losses resulting from disturbance of access to land outside the right of way and losses due to lack of weed control. Some of these items could obviously result in severance damages to property remaining outside the servitude. See Trunkline Gas Co. v. Verzwyvelt, 196 So.2d 58, 60 (La.App., 3rd Cir.1967) and Texas Gas Transmission Corp. v. Pierce, 192 So.2d 561 (La.App., 3rd Cir.1966). The compromise agreement clearly releases such severance damages. Hence, we find we must decide defendants’ motion to annul or reform the release.
The first case cited by defendants is Freeport Sulphur Company v. Aetna Life Insurance Company, 107 F.Supp. 508, where the issue was whether a group life insurance policy which expressed no term could be canceled at will by either party. The *98 court stated the general rules for construction of an ambiguous contract but held that this policy was free of ambiguity and hence resort could not be had to preliminary negotiations leading to the writing of the contract. This and other similar cases dealing with ambiguous contracts have no application here since the present compromise agreement is unambiguous.
Plaintiffs also cite authorities dealing with the reformation of contracts for mutual error. See Carter Oil Company v. King, 134 So.2d 89 (La.App., 2d Cir.1961) and the many cases cited therein. In the present case there is no showing whatever of mutual error. It is true that defendants and their attorneys contend they did not intend the release to cover severance damages, but the pipeline company takes the position that it did intend the formal written agreement would release the severance damages specified. In the absence of mutual error, the law is clear that the contract cannot be reformed. Carter Oil Company v. King, supra.
Defendants next cite several cases holding contracts void for unilateral error. They first cite Carruth v. State Farm Mutual Automobile Insurance Company, 113 So.2d 56 (La.App., 2nd Cir.1959) in which the insured falsely stated in his application for an automobile liability policy that he was not in the armed services. The court held this misrepresentation resulted in an error of fact on the part of the insurer as to a point which was a principal cause for making the contract and hence that the policy was void. See LSA-C.C. Articles 1819, 1821 and 1823. These and other similar cases relied on by defendants are readily distinguishable. In the present case, there is no error of fact. Defendants knew all of the facts regarding the servitude sought, the proposed construction of the pipeline and the damages they suffered. In their brief, defendants do not even argue that they were in error as to any substantial fact.
Defendants also cite Williams v. Robinson, 98 So.2d 844 (La.App., 2d Cir.1957) where an aged negro man, with limited education, signed a deed, thinking that it was a mortgage. The court held that this was error as to the nature of the contract, LSA-C.C. Article 1841. Here, there was no error as to the nature of the contract. Defendants knew it was a compromise of litigation.
Of course, any error of law on the part of defendants or their attorneys cannot be urged as grounds to avoid the agreement. LSA-C.C. Article 1846, par. (2), expressly states “A contract, made for the purpose of avoiding litigation, cannot be rescinded for error of law.”
We conclude the compromise agreement is valid and is binding on the parties as written.
SEVERANCE DAMAGES TO RURAL HOMESITES
We will first discuss severance damages to the property on the highway best suited for rural homesites. Since the pipeline crosses Highway 347 at an angle, plaintiff’s appraisers, Mr. Ritchey and Mr. Chap-puis, allowed severance damages to strips of land necessary to “square off” home-sites on each side of the pipeline. Mr. Chappuis expressed the opinion that a strip of land 55 feet on each side of the pipeline, and for a depth of 220 feet, will be diminished in value $10 per front foot, for a total of $2,200, for both sides of the highway. Mr. Ritchey estimated that only 50 feet on each side of the pipeline will be affected, for a depth of 200 feet, and will be reduced in value $18 per front foot, less 20% retained with the fee, for a total of $2,880 for both sides of the highway.
Defendants’ appraisers, Guidry and Babineaux, allowed severance damages of 40% of the fee value to a 500 foot strip of land, extending 250 feet on each side of the pipeline, for both the homesite and agricultural properties. They computed severance *99 damages totaling $20,200 for both the home-site and agricultural land.
Defendants’ expert, Mr. Wolf, used a different approach. He is of the opinion that the entire 185 acres located in the northwest corner of the farm will diminish in value by 20%. He calculates total severance damages of $23,555. This figure includes damages to both the homesite and agricultural properties.
The trial judge awarded severance damages for the rural homesite portion based substantially upon the Guidry-Babineaux appraisal, except that he allowed damages to a strip of land extending 300 feet on each side of the pipeline by a depth of 250 feet from the road. Thus, a strip of land 600 feet in width by 250 feet in depth contains 3.44 acres, which, at $1600 per acres, has a fee value of $5,504. Forty per cent severance damages comes to $2,201.60. From this, is deducted $146.77 for the 80% of fee value already allowed for the permanent servitude, giving severance damages of $2,054.83 on each side of the road, for a total damage of $4,107.66 to the homesites.
The finding of the trial judge as to severance damages to the homesite property is reasonable and amply supported by the evidence. We find no manifest error in this regard.
SEVERANCE DAMAGES TO THE AGRICULTURAL PROPERTY
Plaintiff’s appraisers, Ritchey and Chap-puis, give no severance damage to the remaining agricultural property. They say that based on their study of sales of farm land in the area, across which pipelines have been constructed, the presence of such lines does not diminish the value of farm property.
As stated above, defendants’ appraisers, Guidry and Babineaux, allowed 40% severance damages, totaling $20,200, to a strip of land 500 feet in width (250 feet on each side of the pipeline) through both the home-site and agricultural properties. When they testified at the trial, they knew that the surface damages had already been compromised. Hence, they attempted to base their allowance of severance damages to the agricultural property on causes other than those settled in the compromise agreement.
Mr. Babineaux gave the following reasons for severance damage to the agricultural property outside the servitude, but within the 500 foot strip: (1) The mere presence of the servitude restricts the use of the property in that no barns, water wells, stock ponds or other such farm improvements can be constructed on the servitude, which means that the farmer’s choice of sites for this construction is limited. (2) The servitude runs at an angle to the boundaries of the fields and this will have an adverse effect. (3) There is always a danger of explosion from large high pressure gas pipelines and this causes fear and buyer-resistance on the part of prospective purchasers.
Mr. Guidry’s testimony is substantially the same as that of Mr. Babineaux except that he gave additional causes for severance damage to the agricultural property. Essentially, the causes he gave are: (1) the servitude will restrict the use of the property in that barns, lakes, wells and other improvements cannot be constructed on the right of way; (2) the fear of explosion; (3) interference with drainage of property outside the right of way; (4) interference with deep plowing; (5) trees and orchards cannot be planted on the right of way; (6) the presence of the servitude will affect any potential higher use which the property may have in the future for residential, commercial or industrial purposes.
Defendants’ third appraiser, Mr. Wolf, apparently did not know when he testified that the surface damage had been or would be compromised. In giving his reasons for severance damage to the agricultural property, he included several which are obviously covered by the release, such as the cost of releveling portions of the fields outside the servitude, fertilizing and *100 restoring the fields, and interference with farming operations due to equipment being unable to cross the trench. These reasons given by Mr. Wolf follow generally those given in the opinions of this court in Trunkline Gas Transmission Company v. Verzwyvelt, supra, and Texas Gas Transmission Corp. v. Pierce, supra. However, it is apparent that some of the severance damages resulting from these causes have been compromised and paid. Mr. Wolf gave as an additional reason the fact that the property may have potential use for residential purposes at some time in the future and the pipeline will devalue this use.
We conclude defendants have proved by the testimony of Babineaux, Guidry and Wolf that some portions of their property best suited for agriculture have suffered severance damages. Similar severance damages to agricultural property have been allowed by this court in several cases, such as Trunkline Gas Transmission Company v. Verzwyvelt, supra, and Texas Gas Transmission Corporation v. Pierce, supra.
One difficulty is that some of these severance damages have been compromised by the release agreement. Under Mr. Gainnie’s own testimony, $4,000 of the $5,500 paid under the release represents the cost of releveling, reconditioning, fertilizing and grass control on 69 acres at $50 per acre (rounded to $4,000). These damages are clearly covered under items 1, 2, 4, 5 and 7 of the release. If severance damages are now allowed by the court for these items, it will mean that the landowners will be paid twice for releveling, reconditioning, fertilizing and grass control on 69 acres, all but 4.28 acres of which is outside the 40-foot right of way. We conclude that any award for severance damages to the agricultural property must give credit for this $4,000 already paid.
Another serious problem is that one of the causes given by defendants’ appraisers for severance damage to the agricultural property is that the presence of the pipeline will detract from any potential higher use which the property may have in the future for residential, commercial or industrial purposes. We think the trial judge correctly stated during the trial that under the evidence in this case the use of the property in the future for residential or other higher purposes is too remote and speculative to constitute a factor in determining market value or severance damages.
Under our law, the measure of severance damages is the difference between the market value of the remaining property, before and after the expropriation State Department of Highways v. Mouledous, 199 So.2d 185 (La.App., 3rd Cir. 1967) and the authorities cited therein. As a general rule, market value is fixed at the time of the taking. Although the property may, at some time in the future, become useful for residential purposes, this cannot be taken into consideration unless it is shown that it could be so developed in the not too distant future, Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6 (1953); State, Department of Highways v. Jenkins, 207 So.2d 380 (La.App., 3rd Cir. 1968). In the present case, all of the appraisers, for both plaintiff and defendants, stated that, except for the homesites on the highway, the present highest and best use of the property is agricultural. None of the appraisers expressed any opinion as to the time in the future at which the property might be suitable for residential, commercial or industrial purposes.
We recognize that defendants’ appraisers have not specified what proportion of the severance damage to the agricultural property is attributable to any future use the property may have for residential or other higher purposes. However, in order to do substantial justice, we estimate that $5,000 is attributable to these speculative uses and is disallowed.
Using the serverance damage figure of $20,200 given by Babineaux and Guidry for both the homesite and agricul *101 tural property, and deducting from this the sum of $4,107.66 we have already found for the homesites, leaves the sum of $16,092.34 in proven severance damages to the agricultural property. Of course, we must disallow the sum of $4,000, discussed above, which was paid under the compromise agreement. Deducting also the sum of $5,000 attributable to future speculative use and disallowed by us, we conclude defendants are entitled to severance damages to the agricultural property in the sum of $7,092.34.
ALLEGED ERRORS IN THE MATHEMATICAL COMPUTATIONS OF THE AWARDS
Defendants contend that in computing the awards the trial judge used a value of $650 per acre for the agricultural property, instead of $675, which is the figure given by Guidry and Babineaux. They also raise a question as to the computation of severance damages to the homesite property.
In their brief filed in this court plaintiff has carefully and correctly explained the mathematical computations used by the trial judge. We are convinced that the court did properly use a value of $675 per acre for the agricultural property. Defendants’ alleged error in computing the severance damages to the homesites is answered by the fact that defendants failed to allow for the portion of the homesites within the 40-foot servitude. This has already been compensated in figuring the value of the servitude itself.
We find no error in the computations by the trial court.
TAXING OF EXPERT WITNESS FEES AND OTHER COURT COSTS TO THE DEFENDANTS
Plaintiff contends that since it offered the landowners the sum of $13,000 before this suit was filed, and the final judgment of the district court is $12,773.77 (including the $5,500 paid under the release) defendants are not entitled to any award for the fees of their expert appraisers, Tennessee Gas Transmission Company v. Violet Trapping Company, 200 So.2d 428 (La.App., 4th Cir. 1967), writ of certiorari denied, 251 La. 65, 203 So.2d 86. However, we have found that defendants are entitled to more than the sum of $13,000 which was offered by the pipeline company prior to suit. Hence, the fees of defendants’ three expert appraisers must be taxed as costs of court and paid by the plaintiff.
Babineaux and Guidry submitted a joint report and statement of their charges in which they say they worked 80 hours on preparation for this case, including conferences, inspection of the property, etc. Their fee is $10 per hour, or a total of $800 for preparation. Additionally, they charged $100 a day for the 4 days they were present in the court room. We find these charges reasonable and will allow them.
Defendants’ expert appraiser, Mr. Wolf, claims a fee of $1500. He says that in preparation he met with Mr. Gainnie twice, with defendants’ attorneys on 4 occasions, consumed 2 days inspecting the property, 1 day in giving a deposition, and 1 day in court during the trial. He breaks down his charges as follows:
Preparation-$1,200;
Giving a deposition-$ 150;
1 day in court-$ 150 .
Plaintiff contends no fee is allowable for taking Mr. Wolf’s deposition since he is only a witness, not a party, in the case, and the deposition was not used for one of the purposes specified in LSA-C.C.P. Art. 1428. The record shows that after Mr. Wolf completed his testimony at the trial, defendants offered to file his deposition in evidence. Plaintiff’s objection to the filing of the deposition was sustained. It was placed in the record under an offer of proof. It is clear that the ruling of the court was correct and the portion of Mr. Wolf’s fee attributable to the taking of the deposition must be disallowed. Also, we concluded that Mr. Wolf’s charge for appearance in court should be the same as that of Mr. *102 Babineaux and Mr. Guidry, i. e., the sum of $100 per day. We conclude Wolf is entitled to a fee of $1300.
Mr. Paul Montgomery testified as an expert in the field of pipeline engineering, construction and supervision. Defendants submit that a fee of $200 would be justified, and we agree.
SUMMARY OF OUR AWARDS
Summarizing, we find the judgment of the district court must be amended so as to provide the following awards:
1) For the permanent servitude taken.$2,655.18
2) For the temporary work area. 500.00
3) Severance damages to the homesite property on the highway . 4,107.66
4) Severance damages to the agricultural property, not including the $4,000 severance damages released by compromise . 7,092.34
5) Defendants' expert witness fees assessed as court costs .
Mr. Babineaux — $1200.00
Mr. Guidry — $1200.00
Mr. Wolf — $1300.00
Mr. Montgomery — $ 200.00
OUR DECREE
For the reasons assigned, the judgment appealed is amended so as to increase the award for compensation and damages, not including the $5,500 paid under the compromise agreement, to the sum of $14,355.-18. Also, the judgment appealed is amended so as to tax as court costs the fees of defendants’ expert appraisers as follows:
Mr. Babineaux — $1200.00
Mr. Guidry — $1200.00
Mr. Wolf — $1300.00
Mr. Montgomery — $ 200.00
Additionally, all costs in the trial court are assessed against the plaintiff. Otherwise than as herein amended, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed, as amended.