229 So.2d 182 (1969)
MICHIGAN WISCONSIN PIPE LINE COMPANY, Plaintiff-Appellee,
v.
Larry H. MILLER, Defendant-Appellant.
No. 2877.
Court of Appeal of Louisiana, Third Circuit.
November 25, 1969.
Dissenting Opinion December 4, 1969.
Rehearing Denied January 7, 1970.
Writ Refused February 27, 1970.
Young & Burson, by I. J. Burson, Jr., Eunice, for defendants-appellants.
Shotwell, Brown & Sperry, by E. C. Stout, Monroe, and Garland and DeJean by H. B. DeJean, Jr., Opelousa, for plaintiff-appellee.
Before SAVOY, HOOD and MILLER, JJ.
SAVOY, Judge.
The plaintiff instituted this suit to expropriate a right-of-way across defendant's land in St. Landry Parish, Louisiana. Plaintiff is constructing a new thirty inch high-pressure gas transmission pipeline which will parallel at a distance of 25 feet an existing twenty inch pipeline which was constructed in 1952. Plaintiff acquired a right-of-way, 75 feet in width, for the first pipeline, and the permanent servitude sought in this case, of 30 feet in width, falls within the original servitude.
Consolidated with this suit for trial and appeal are six other proceedings to expropriate a similar servitude upon other lands, also in Ward Six of St. Landry Parish. We will discuss all issues in this opinion, but will render separate decrees in the companion cases. See Michigan Wisconsin Pipe Line Company v. Spears, 229 So.2d 187 (La.App. 3 Cir. 1969); Michigan Wisconsin Pipe Line Company v. Doucet, 229 So.2d 187 (La.App. 3 Cir. 1969); Michigan Wisconsin Pipe Line Company v. Young, 229 So.2d 188 (La. App. 3 Cir. 1969); Michigan Wisconsin Pipe Line Company v. McGee, 229 So.2d 188 (La.App. 3 Cir. 1969); *183 Michigan Wisconsin Pipe Line Company v. Scanlan et al., 229 So.2d 190, (La.App. 3 Cir. 1969).
The district court granted the servitude and awarded defendant landowners compensation and damages for the value of the temporary and permanent servitudes taken, for restoration costs, and for crop damages. However, severance damages were not allowed. Defendants filed appeals to this Court, and plaintiff did not appeal or answer the appeals. The sole issue raised on appeal is whether or not the district court erred in denying defendant landowners an award for severance damages.
The expert witnesses of both plaintiff and defendants were well qualified. There was very little difference in their evaluation of the lands taken. Plaintiff's experts valued the lands prior to the taking at from $475.00 to $500.00 per acre, and defendants' experts valued the lands at $525.00 per acre. In regard to severance damages, the landowners' experts testified that a strip 500 feet wide on either side of the proposed pipeline would suffer a 30% diminution in value due to the second pipeline, and that the remaining property of each landowner would suffer a 5% loss in value. Plaintiff's experts testified that no severance damages would result from the construction of the second proposed pipeline.
The district court apparently accepted the opinion of plaintiff's experts, which was based on certain studies, that pipelines do not cause depreciation in the market value of the property traversed by them. However, this Court has had occasion recently to consider the questions of severance damages in connection with plaintiff's new pipeline in cases emanating from St. Martin Parish. See Michigan Wisconsin Pipeline Company v. Bonin, 217 So.2d 741 (La.App. 3 Cir. 1969) (writ refused); Michigan Wisconsin Pipeline Company v. Angelle, 217 So.2d 748 (La.App. 3 Cir. 1969) (writ refused); Michigan Wisconsin Pipeline Company v. Sugarland Development Corporation, 221 So.2d 593 (La.App. 3 Cir. 1969) (writ refused); and, Michigan Wisconsin Pipeline Company v. Angelle, 221 So.2d 598 (La.App. 3 Cir. 1969.)
In the cases presently before us on appeal, plaintiff used the same experts, Messrs. Allen J. Angers and Maurice Chappuis, both of Lafayette; and their testimony as to severance damages, or lack of severance damages, was substantially the same as that given in the above cases. Defendants in the instant cases also used Mr. Preston J. Babineaux, of Lafayette, who had testified in the earlier cases. Defendants' other expert was Mr. Gordon Hammer a relator of Lafayette.
Considering the evidence presented, and in view of our recent holdings above, we find the district court erred in disallowing severance damages.
The present expropriation is for a thirty inch high-pressure transmission pipeline, including a 30 foot wide right-of-way area alleged to be necessary for the maintenance and operation of the pipeline. Mr. Babineaux and Mr. Hamner testified that the property without a pipeline would be valued at $750.00 per acre; and, that the first twenty inch pipeline decreased the value of the adjoining lands by 30%, resulting in its value of $525.00 before the recent taking. They believed the second pipeline decreased the adjoining property for a distance of 500 feet on either side of the pipeline right-of-way an additional 30% in value. Their opinions were based on their experience in handling properties in St. Landry Parish and other adjoining parishes. These experts further testified as to their personal experiences in dealing with prospective customers and were convinced that while there are prospective purchasers who will buy property near to or burdened by high-pressure pipelines, the pipelines depress the price which would otherwise be obtained, and many potential purchasers would not consider such a purchase.
We think it reasonable to conclude that land burdened with two high-pressure pipelines *184 is less desirable than land burdened with one, as there is twice as much danger of explosion and an increased use of the servitude for maintenance and operation of the lines. Additionally, there is less chance that the servitude will be abandoned. Since the property is less desirable than before it was burdened by the additional pipeline, the market, as evidenced by the number of buyers, is reduced; and so, the price must be lowered to compensate for this additional hazard on or near the land.
In the instant cases, this Court finds that the evidence shows the second pipeline has caused an additional loss in the market value of the adjoining property; and that the landowners are entitled to an award for this loss in view of the provision in our Constitution which requires that property owners receive compensation for any damage caused by a taking for public purpose.
Although plaintiff's experts admit that the highest and best use of the property is for rural homesites, as well as for agricultural purposes, they testified there was apparently no ready market for the property as rural homesites, as there had been no recent sales in the immediate area. However, the landowners' experts, who have more experience in sales in St. Landry Parish, testified that the demand for small acreage homesites or country estates exceeded the supply. The properties are located in the Pitreville area, within four miles of Lawtell, six miles of Church Point, and eleven miles of Eunice. Even plaintiff's experts agreed that the lands are well-suited for rural homesites, being located on good all-weather roads, some blacktop, and some gravel, except for the smaller Scanlan acreage. There is an availability of natural gas, electricity, phones, and school bus service. The properties are high, level, and well-drained. These factors support a finding that the highest and best use of the properties was for rural homesites or country estates for the purpose of their evaluation in connection with an expropriation proceedings. In passing, it is noted that the properties in question were valued at about the same value for agricultural purposes, and there would be little difference in computing severance damages to agricultural lands. The record also shows that the adjoining properties would suffer loss in the agricultural value due to added problems of drainage and cultivation.
We find that the preponderant expert evidence shows the property adjacent to the permanent servitude for the second pipeline has suffered a 30% loss in market value. However, to be consistent with our previous holdings, we will limit the severance award to the area within approximately 250 feet on both sides of the servitude. We will also exclude entirely the adjoining area within the original servitude for the 1952 pipeline. For the purpose of fixing severance damages, we will value the lands affected at $500.00 per acre before the recent taking.
In the instant case, the pipeline traversed the property of Larry H. Miller a distance of 1925 feet. In computing on a square footage basis the area of the properties damaged on each side of the servitude, it is noted that approximately one acre is affected for each 100 feet of right-of-way. The pipeline extended 1925 feet across Miller's land and affected approximately 19.25 acres. At $500.00 an acre, the 19.25 acres affected are valued at $9,625.00 before the recent taking, and were damaged by 30%, or $2,887.50 by the second taking. Larry H. Miller is, therefore, entitled to an award for severance damages of $2,887.50, and the award to him by the district court of $1,750.00 will be increased to $4,637.50.
For the companion cases, severance damages will be computed on the same basis.
The property of Elaine Nettie Mary Young Spears was traversed by the pipeline a distance of 529 feet, and affected approximately 5.29 acres. At $500.00 an acre, this acreage was valued at $2,645.00 before the taking, and was damaged by *185 30%, or $793.50. Accordingly, the award by the district court to Mrs. Spears in the amount of $492.80 will be increased by $793.50 to $1,286.30.
The pipeline crossed the lands of Rose Inez Doucet a distance of 516 feet, affecting the adjoining 5.16 acres which are valued at $2,580.00. 30% severance damages amounts to $774.00, and the award to her by the district court of $492.80 will be increased to $1,266.80.
The pipeline crossed the lands of Jefferson Davis Young, Jr., a distance of 520 feet, affecting the adjoining 5.20 acres valued at $2,600.00. Severance damages of 30% amounts to $780.00, and the district court's award of $830.30 will be increased to $1,610.30.
The pipeline crossed the lands of Remi McGee a distance of 1,238 feet, affecting the adjoining 12.38 acres valued at $6,190.00. Severance damages of 30% amounts to $1,857.00, and the district court's award of $1,714.75 will be increased to $3,571.75.
For the smaller tract of land owned by Michael W. Scanlan, Jr., et al, the pipeline traversed a distance of 316 feet, affecting the adjoining 3.16 acres valued at $1,580.00. Severance damages of 30% amounts to $474.00, and the award of the district court of $180.00 will be increased to $654.00.
The pipeline crossed the larger tract of land owned by Michael W. Scanlan, Jr., et al, a distance of 1,716 feet, affecting 17.16 acres valued at $8,580.00. Severance damages of 30% amounts to $2,574.00, and the district court's award of $1,604.50 will be increased to $4,178.50.
For the reasons assigned, the judgment of the district court is amended so as to increase the award to defendant, Larry H. Miller, from $1,750.00 to $4,637.50, together with legal interest on all unpaid amounts from the date of the taking until paid. In all other respects, the judgment of the district court is affirmed, at the cost of plaintiff.
Amended and affirmed.
HOOD, Judge (dissenting).
The only issue presented on this appeal is whether the trial judge erred in rejecting the defendant landowner's demand for severance damages. My colleagues have reversed the trial judge on factual grounds, and I respectfully disagree.
The evidence shows that the rear portion of defendant's property has been traversed by a 20 inch pipeline since 1952, and that that pipeline is located within a 75 foot wide right-of-way which was owned by plaintiff long before the instant suit was filed. The pipeline servitude being expropriated here is 30 feet wide, and it lies wholly within the existing 75 foot right-of-way, and thus no additional property is being taken for right-of-way purposes. After the taking defendant may continue to use his property as he has done for the past 17 years, the only difference being that hereafter his property will be traversed by two pipelines instead of one, the two lines running parallel to each other and about 25 feet apart.
All of the real estate appraisers who testified agree that defendant's property could be used for rural homesite purposes, but that up to the present time it has been used only for agricultural purposes and that there is no immediate demand or market for homesites in that area. The appraisers concluded that the value of the property affected by each of these consolidated suits was the same per acre, whether it be considered to be agricultural or homesite land. There is no dispute among the parties as to the values which were placed on the property.
Although the two appraisers called by defendant recognized that there is no immediate demand for homesite property in this area, they based their conclusion that *186 defendant had sustained severance damages on two grounds: (1) Some prospective purchasers are afraid of explosions in gas lines, and thus defendant may encounter some sales resistance if and when he decides to market the property for homsite purposes; and (2) it is difficult to obtain a Veteran's Administration loan on a home located within 300 feet of such a pipeline. I think these appraisers have overlooked the fact that those conditions existed before the instant suit was filed, and thus that the construction of a second pipeline within a few feet of the first one will not make sales resistance any greater and it will not make Veteran's Administration loans any more difficult to obtain. I agree with the trial judge that there is no sound basis for concluding that defendant's remaining property has sustained a diminution in value because of the construction of this second pipeline.
The evidence shows that defendant's property fronts on a state highway, and that the proposed pipeline traverses only the rear portion of that property. It enters the east side of defendant's tract at a point 792.5 feet from the highway and it leaves the west side at a point 994 feet from the highway. If the property is ever to be used for homesite purposes, the sites would be located near the highway and the existence of these two pipelines in the rear would have no affect on the value of such property for those purposes.
In each of the companion cases, except one in which the tract is not accommodated by a road at all, the pipeline traverses the rear portion of the property, and thus for the reasons already shown it would not diminish the value of any such tract for homesite purposes.
The judgment in each of these consolidated cases provides that the landowners may continue to use the property affected by the right-of-way for roads, streets, sidewalks, passageways, electric light and power lines, water lines, sewer lines, gas lines, telephone poles and telephone lines, and any and all other utilities as the landowner may desire. In view of the location of the right-of-way being taken, the use to which the property can be put, and the conditions of the servitude, I agree with the trial judge that the remaining property has suffered no severance damages at all as a result of this taking.
The two experts called by defendant testified that a strip of land 500 feet wide on each side of the proposed pipeline would suffer a 30% diminution in value, and that all of the landowner's remaining property would suffer a 5% loss in value as the result of the construction of the second pipeline. My colleagues have not accepted the opinions of any of the experts who testified. Instead, they have arbitrarily decided that a strip 250 feet wide on each side of the servitude would suffer a 30% diminution in value and that there would be no severance damages to any other remaining property. They based that conclusion on the ground that in four recent cases a majority of this court reversed the trial judge and awarded severance damages because of the construction of a second pipeline. Those cases, of course, affected entirely different tracts of land and the decisions by a divided court were based on different evidence. I cannot agree with the principle that hereafter we must always award severance damages of a specific amount when a second pipeline is constructed, regardless of the evience, simply because we previously awarded such damages in another case, affecting different property, where a second pipeline was constructed.
I feel that the trial judge was correct and that the judgment appealed from should be affirmed. For these reasons, I respectfully dissent.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.