PAVY, Judge.
This case and that of Louisiana Intrastate Gas Corp. v. Girouard (Appellate Docket No. 5435), 336 So.2d 1049, involve expropriations of pipeline servitudes traversing three adjoining tracts of land. They were consolidated for trial and will be dealt with in one opinion with separate decrees.
For the purpose of laying a 12-inch pipeline from Gueydan in Vermilion Parish to Scott in Lafayette Parish, plaintiff sued for *1044 a 30-foot permanent pipeline servitude plus an additional 20 feet of temporary working space. No issues other than quantum are involved as the right to take was conceded.
The properties are located in a rural area of Vermilion Parish about four to five miles northwest of Kaplan. Rustum Girouard, father of the other defendant, Boyd Gir-ouard, had owned a 60 to 70-acre tract running nearly one-half mile on the east side of Highway 13 and being roughly rectangular in shape. The south end of this tract is traversed by a stream or canal known as Bayou Grand Marais. It runs generally east from the west line (highway) to the center of the tract and thence runs northeasterly to the east line of the tract. A few years prior to these expropriations, Rustum Girouard donated to his son, Boyd Girouard, a tract containing approximately 6V2 acres irregular in shape and set back about 516 feet from the highway but connected to it by an 80-foot strip running from the north end of the tract to the highway. This donated tract was bounded north by the northern portion of Rustum’s larger tract, west by Rustum’s property fronting the highway and (as to the 80-foot strip) by the highway and south and east by Bayou Grand Marais. Thus, at the time of these expropriations Rustum Girouard owned an 8V2-acre tract fronting on the east side of the highway. Boyd Girouard owned a 6V2-acre tract immediately east of Rus-tum’s tract and connected to the highway by the 80-foot strip. Additionally, Rustum Girouard owned a 7-acre tract immediately east of Boyd Girouard and bounded north and west by Bayou Grand Marais and south and west by adjoining owners. These three tracts were roughly at the same latitude. At this point, the pipeline ran roughly east to west and traversed each of these tracts at their approximate centers.
Two to three years prior to these condemnations, Boyd Girouard had built a modern brick residence on his property. The pipeline was estimated to be 130 to 160 feet south of this residence. Previous to Rus-tum Girouard’s acquisition of the original larger tract, two major Transco pipelines traversed the Rustum Girouard tract from its southeast corner and running slightly west from due north so that it ran mostly along the eastern line of the Rustum Gir-ouard rear tract and just barely traversed the northeast corner of Boyd Girouard's property. The distance of these lines to Boyd Girouard’s dwelling was estimated respectively at 400 and 600 feet by two of the experts.
The district court awarded Boyd Girouard a total of $11,054 and Rustum Girouard a total of $9,872.60. Plaintiff has appealed from both these awards and defendants have answered the appeals in each case to increase items of $2,400 for soil erosion and sodding to $10,125 for bulkheading to prevent further erosion.
LOSS OF CRAWFISH CROP BY RUSTUM GIROUARD
Defendant Rustum Girouard claimed $10,000 for loss of his 1975 crawfish crop from the rear or easternmost tract resulting from drainage of the area by plaintiff’s actions. The trial judge allowed $780 based on a loss of 2,000 pounds.
Prior to 1975, Rustum Girouard had never commercialized the crawfish potential of this area although it had naturally furnished some crawfish for family use. In 1974, he built levees for maintaining the water level, flooded the area with portable pumps and added to the natural stock by catching crawfish elsewhere and transferring them to the 7-acre tract.
Mr. LeBlanc Delahoussaye, a graduate agronomist and consultant in rice production with some experience in crawfish production as a supplementary crop to rice, testified that he tested for crawfish on the undrained areas and counted a catch of 45 crawfish per net in five minutes and calculated this would yield slightly above the usual harvest of 500 lbs. per acre. He set the price at 35 to 45<p per lb. He had visited the area in the first week of March and estimated only about Vso of the 7-acre tract was still unflooded.
*1045 Mr. Donald Gooch, a graduate zoologist who had specially studied crawfish farming, engaged in it and written on the subject, testified for defendants. He visited the area on April 12, 1975, but conducted no tests. There was little water remaining in the area. He explained that when ponds are drained some of the crawfish will burrow and on reflooding will emerge again and can be commercially harvested but that the young and some of the larger ones will be lost if the draining is too rapid. Based on his own crop of that year, he estimated a normal yield of 389 lbs. per acre with the price ranging from 15 to 35$ per lb. It was his experience that a nonlandowner farming crawfish netted 34 percent of the gross and paid 40% of the gross to the landowner.
Rustum Girouard stated that he had 5.6 acres in actual crawfish production consisting of three separate ponds of roughly equal size formed by two east-west internal levees. He claimed one of the levees was damaged when a marsh buggy was driven over it and the other was damaged when the line ditch was cut. The first of these instances would have occurred in November and the second in January. He made no effort to repair the levees or reflood and gave no completely satisfactory explanation for these failures. Testimony by the quality control engineer on the project tended to disprove the extent of drainage claimed by defendant.
Upon considering the testimony of both experts, the variables and unknowns involved in this issue and the overall probabilities, we think an award of $555 would be fair and realistic.
BULKHEADING, EROSION AND SODDING
Each defendant claimed $10,125 as the cost of constructing a 75-foot long bulkhead on his side of Bayou Grand Marais to prevent washout at the point where the pipeline crossed. The district court found that the evidence did not show the necessity for bulkheading but allowed each defendant $900 for sodding and $1,500 for repairing, maintenance and dirtfill needed to correct the erosion to date of the trial alongside and adjacent to location of the pipeline in question.
Defendants’ witness Delahoussaye, the agronomist, and Roy Young, a contractor, testified that the bayou banks had settled about two feet at the right of way point. Young considered a bulkhead was necessary to prevent washout and Delahoussaye stated that it would take $1,900 to resod both banks. A. J. Broussard, witness for plaintiff, who was employed by a drainage district, testified that such districts never require bulkheading. We think the trial court was correct in disallowing the claim for bulkheading.
Pictures of the banks taken a week before trial, and after defendants’ two witnesses had visited the bank site, do not support their testimony regarding the settling. The total of $2,400 ($900 for sodding and $1,500 for refill, maintenance, etc.) allowed each defendant is excessive. These banks will naturally resod themselves and the little erosion that can occur prior to that would be minimal. We conclude that an allowance of $400 to each claimant for the erosion of the bank and protective measures until natural resodding would be sufficient.
VALUE OF SERVITUDES AND SEVERANCE DAMAGES
Plaintiff’s expert witnesses were Mr. Allen Angers, a real estate consultant and professional appraiser with eminent qualifications and extensive experience in the general area of South Louisiana including Vermilion Parish, and Mr. Arthur Flemming, president of an Iberia Parish Savings & Loan Association and an appraiser with some experience in Vermilion Parish. Defendants’ expert was Mr. Cordell Hebert, an experienced realtor and appraiser from Abbeville in Vermilion Parish. Additionally, defendant offered the testimony of Mr. T. J. Stevens, a realtor of Natchitoches, Louisiana, who described the damage from a disastrous pipeline explosion in that city *1046 in 1954 in which several houses were destroyed and seventeen persons killed. He related a consequent depressing effect this had on sales and prices of lots within several hundred feet of pipelines in the Natchi-toches area. Two other witnesses for defendant testified as to the physical damage wrought by a pipeline explosion near Ka-pian in April, 1973.
In brief, plaintiff-appellee did not seriously question the awards made for value of the permanent servitudes and temporary work space except as to three instances in which the trial court allowed a greater amount than the experts expressed. Ordinarily, an allowance in excess of the expert’s figure should not be granted. See Department of Highways v. United Pentacostal Church, 313 So.2d 886 (2d Cir. 1975). Although we note no exceptional circumstances warranting an award greater than the experts’ maximum, the differences ($15, $16 and $102.70) are so small that we cannot say the trial judge was in manifest error and affirm as to those particular items.
Appellant strenuously attacks the district court’s award of severance damages. Rus-tum Girouard was allowed severance damages of $4,884 for the west (highway fronting) tract. This was calculated at 25% of the whole 8.14 acres outside the servitude at a value of $2,400 per acre. He allowed $672 for severance damage to Rustum Gir-ouard’s east (rear) tract. This was calculated at 10 percent of the whole 6.72 acres remaining at $1,000 per acre. Boyd Gir-ouard was allowed $5,054 severance damages to his residence calculated at 20 percent of $25,270, the home’s replacement value at time of taking and additionally, $3,100 for 20 percent of the whole 7.75 (correctly 6.25) acres remaining at $2,000 per acre.
All three of the experts used various comparable sales in the area from which adjustments were made to determine the value of these tracts. We do not deem it necessary to detail the various sales or the adjustments used by the experts. Mr. Angers did not think Rustum Girouard’s west (highway fronting) tract was adaptable to rule home-sites. He considered it too low in relation to the highway for that purpose. He treated it as farmland and placed a value of $1,100 per acre. Hebert and Flemming treated this tract as rural homesite land and valued at respectively at $2,400 and $2,500 per acre. We think the tract has some adaptability to homesite use because of its frontage on the highway. Pictures in evidence do show it be considerably lower than the highway. Although this will lessen the degree of its homesite potential, it will not completely deprive it of its use as rural homesite land. The evidence indicates that a substantial portion of this tract south of the pipeline and along Bayou Grand Ma-rais is in borrow pit. The exact amount cannot be determined from the record. We will fix the value of this tract exclusive of the borrow pit area at $1,800 per acre.
Both plaintiff’s experts were of the opinion that no severance damage would be incurred because of the proximity of a pipeline to a proposed residence. They were impressive in relating their experience regarding this. Mr. Angers told of tracing the course of a United Gas pipeline through the City of Lafayette and his findings regarding the proximity of dwellings to it. The size and exploding potential of that line was not compared to the instant one. Another key factor in his position was that although a pipeline may dissuade some prospective purchasers of adjacent lands, the market for residences is so active that no appreciable effect would be had on the price. We feel this may be true in metropolitan or suburban areas but question whether it would be applicable to the market for rural homesites.
Hebert, defendants’ witness, was equally impressive that there is a definite public fear of living near a pipeline and that the presence of one will decrease the sale value of adjoining property for residential purposes. He had no concrete market data to support his position. However, it seems to us that there must necessarily be an adverse effect on the sale value of prop *1047 erty near a pipeline and we cannot conclude that no severance damages would result in this case.
Hebert calculated severance damages at 25 percent of the value of the whole tract. We do not believe that the whole tract would be so affected by the pipeline. Difficulty is encountered in devising a severance damage formula in this case. Plaintiff’s experts offered no such formula for they did not think severance damages were sustained. The expert Hebert would condemn a strip 200 to 250 feet wide on each side of the servitude swath as not suitable for actual construction of a dwelling but would consider said property usable as part of a residential homesite. We think a fair result might be reached by considering that 4.7 acres (the area formed by two 200-foot strips 500 feet long — -the property depth) outside and adjoining the servitude as damaged to the extent of 25 percent. At $1,800 per acre, this would compute to $2,115 severance damages on this tract. The tract fronts 650 feet on the highway and the pipeline crosses it at its approximate center. The area south of the pipeline which is in borrow pit is unknown. Alternatively, we could conclude that Rustum Girouard has been deprived of the residential value of one homesite area of the usual frontage of one acre by the property depth of 500 feet. This would roughly equal 2.5 acres. His actual loss would be the difference in that area’s value as residential property ($1,800) and its value as agricultural property. This latter is fixed at $1,100 in accordance with Angers’ testimony regarding its agricultural use value. This $700 per acre difference for the 2.5 acres would total $1,750. We will average out these two results at $1,925 and fix that amount for severance damages on this tract.
The Boyd Girouard (center) tract is set back approximately 500 feet from the highway and has access to it by an 80-foot strip at its northern end. It is well elevated and has tree growth adding to its residential appeal. All experts considered it to be adaptable to homesite use and fixed a $2,000 per acre value. The pipeline runs through this tract a distance of 367 feet at approximately its center and 130 to 160 feet south of the Boyd Girouard residence. Bayou Grand Marais forms its southern and eastern boundaries by running an irregular course in a northeasterly direction from the southwest corner of the tract. This gives the tract a narrowing or tapering effect towards its southern end. Neither of plaintiff’s experts thought it had sustained severance damages because of the reasons previously set forth. Additional consideration was given to the problem of establishing a road to connect with any proposed new additional residence and the fact of desired privacy by Boyd Girouard. These experts thought that any sale would be highly selective. Defendant Boyd Girouard expressed the hope that he would have been able to sell the land south of his residence to his two children for their homes. At time of the trial, they were only three and six years of age.
Defendants’ expert fixed severance damages to the tract at $2,500, being 20 percent of the $12,500 value for the 6.25 acres at $2,000 per acre. We think this formula is unduly favorable to defendant. With 200-feet strips on either side of the servitude as being partially affected, slightly over 3 acres would be involved (360 feet, the tract’s depth, X 400 feet equals 144,000 sq. feet).. This acreage at $2,000 per acre would come to roughly $6,000. Damage to the extent of 25 percent would equal $1,500. Because of the location of the pipeline in relation to the residence, we could also conclude that defendant Boyd Girouard has lost the residential value of one home site of an acre wide by the property depth of 367 feet. This would come to slightly over an acre and a half. The actual loss would be the difference between its value as residential land ($2,000 per acre) and its value as farmland, which would be $1,100 per acre in accordance with Angers’ estimate on the Rustum Girouard front tract. The per acre difference would be $900 and the total loss would be $1,350. We will average out these two results ($1,500 and $1,350) to $1,425 and *1048 set said amount as severance damages to this tract.
For the same reasons heretofore set out, neither of plaintiff’s experts thought that the Boyd Girouard residence was damaged by the laying of a pipeline 130 to 160 feet south of it. Defendants’ expert was of the contrary opinion and assigned 20 percent severance damage to the home. He gave it a value (replacement cost less depreciation) at the taking time of $25,270. The valuation seems in line and is not seriously questioned and we will accept it. Again we think it necessarily follows that some adverse effect must occur to the value of a residence within such proximity to a pipeline and accept defendants’ expert’s view on this matter. However, we conclude that the 20-percent damage percentage is unacceptable. This figure represents a judgment conclusion from his experience. As is necessarily so in these situations, he was unable to express a justification for the figure. While we cannot exactly criticize the formula in express terms, we conclude the result is high and will assign an overall loss to the residence of $3,600.00.
Rustum Girouard’s rear tract south and east of the bayou was treated by the experts as either farmland or seasonal pasture because of inundation. This flooding is borne out by the evidence regarding its crawfish production history. We cannot accept defendants’ expert’s assessment of a 10 percent devaluation of the tract due to the pipeline. The infrequent necessity of an owner or user’s presence near the pipeline can occasion only a negligible adverse effect on its value. We think such devaluation is too slight to be cognizant in law and must disallow this claim.
We recapitulate the various items of recovery as follows:
Rustum Girouard
Front or west tract
1. Permanent right of way $ 777.70
2. Temporary right of way 60.00
3. Severance damage 1,925.00
Rear or east tract
1. Permanent right of way 224.00
2. Temporary right of way 75.00
3. Severance damage None
4. Crawfish loss 555.00
5. Erosion on canal bank 400.00
Total $4,016.70
Bovd Girouard
1. Permanent right of way $ 450.00
2. Temporary right of way 50.00
3. Severance damage to land 1,425.00
4. Severance damage to residence 3,600.00
5. Erosion on canal bank 400.00
Total $5,925.00
Counsel for the expropriating authority claims we must, in assessing severance damages, give effect to the previous presence of the two Transco pipelines. No severance damages were allowed on Rus-tum Girouard’s rear tract over which those two pipelines mainly passed. They barely touched the northeast corner of Boyd Gir-ouard’s (center) tract and are estimated to be 400 to 600 feet from his residence. This is beyond the affected distance recognized in this opinion. Further, we have restricted severance damages on the Boyd Girouard tract to the area south of the residence. Therefore we see no problem of prior severance damage because of the two previously existing Transco pipelines.
Counsel for plaintiff complains of the court’s allowance of a preparation fee to the witness Cordell Hebert in the amount of his bill, arguing that the agreement between the client and the witness cannot control the amount. The trial court did allow the “contractual amount” but we take this to mean not that it was bound by the agreement but that the amount was reasonable. The bill was for $275 for 11 hours at $25 an hour. We do not conclude that it is excessive and will not disturb it.
Further, counsel questioned the fees of Young, Delahoussaye and Stevens on the grounds that they were not experts and did not assist the court. We think these witnesses offered expertise which was of some value to the court. The expert-wit *1049 ness-fee statute is not restricted to those who give opinions. It covers witnesses who relate or report special or scientific facts. See R.S. 13:3666.
For reasons assigned the judgment of the district court is amended so as to reduce the amount of the judgment in favor of Rus-tum Girouard and against Louisiana Intrastate Gas Corp. to the sum of $4,016.70 and as amended the said judgment is affirmed. Costs of this appeal are to be borne equally by appellant and appellee.
AMENDED AND AFFIRMED.