PAVY, Judge.
This is an expropriation suit involving a servitude for a 16-inch pipeline. The only issues are those relating to quantum. The judgment granting the rights was previously agreed upon. It provides for a 30-foot permanent servitude, being 15 feet on each side of the line that was laid, plus temporary construction servitudes consisting of two 10-foot strips adjacent to the permanent servitude area and three others, each 100 feet square and centered on the servitude strip.
The trial judge allowed the following amounts: permanent servitude, $1,768.10; temporary construction servitudes, $100; severance damages, $9,644; levee repair, $455; pasture damage, $555; erosion damage, $1,500. The plaintiff-condemnor has appealed. Defendant-landowner has an *1051 swered the appeal, seeking to increase the erosion item to $25,000 as the cost of bulkheads necessary to prevent erosion.
Defendant’s land is located in a well-inhabited rural area about two miles from Kaplan in Vermilion Parish. It contains 53 acres and is formed into an L-shape by two rectangles. It is situated in the southeast quadrant of an intersection formed by a north-south blacktop highway and an east-west parish gravel road described by the experts as second-class. The pipeline herein dealt with measures 1,296 feet on defendant’s property, runs north to south and is located slightly over 700 feet east of the blacktop highway bounding defendant’s property on the west. There are no improvements within any area possibly affected by the line. Immediately south of, and parallel to, the gravel road is an irrigation canal. A drainage canal runs east to west and crosses the property at about its center. An old Monterey 14-inch pipeline parallels the line involved herein a distance of 35 feet west of it.
Plaintiff’s experts were Mr. Allen Angers, a professional appraiser and real-estate consultant with vast experience in the Acadiana area, and Mr. Sam Kennedy, a realtor and appraiser of New Iberia. Mr. Cordell Hebert, a realtor and appraiser from Abbeville in Vermilion Parish, testified for defendant. All these experts used various comparable sales in the area from which adjustments were made to arrive at the value of the land in question. Angers and Kennedy considered the land’s highest and best use to be agricultural with a near-future potential for rural homesites or midway between an agricultural and rural homesite. Angers valued it at $1,250 per acre and Kennedy at $1,000 per acre. Hebert considered its highest and best use was for rural homesites of one to three acres in size and placed a worth of $1,800 an acre on it. Upon examination of the various com-parables used by the experts, and consideration of the previously mentioned general factors regarding this land and the area involved, for the purpose of the specific taking herein, involving land located 700 feet from the improved road, we will use the $1,250 evaluation as proper.
Questioning of Hebert did not explicitly elicit a percentage of the land’s value which he attributed to the permanent servitude. Angers assigned roughly 80 percent and Kennedy 50 percent. We fix it at 75 percent and thus value the servitude at $937.50 per acre. For the 89 percent of an acre encompassed within the servitude area herein, the value of the servitude taken equals $835, which amount we assign for the permanent servitude.
There was some confusion regarding the exact area of the various temporary servitudes because of the descriptions in the petition and judgment and the fact that the three square temporary servitudes encompass the permanent servitude strip itself and the two 10-foot strips. Kennedy calculated the temporary servitudes at 2.08 acres and assigned a rental of 25 percent of the value. The other two experts calculated the temporary servitude areas at slightly in excess of one acre. We compute this to be the correct area involved in the temporary servitudes. Angers fixed the value at a rental of $50 per acre and Hebert at $75 per acre. Because of the small discrepancy between these figures and the trial Judge’s award of $100, we can not say there is manifest error and will not disturb this item.
By stipulation, the parties incorporated testimony of witnesses in two other pipeline servitude cases argued concurrently with this matter. See Louisiana Intrastate Gas Corp. v. Girouard, 336 So.2d 1042 (1976 3d Cir.) and Louisiana Intrastate Gas Corp. v. Girouard, 336 So.2d 1049 (1976 3d Cir.). This testimony related a pipeline explosion in Natchitoches with a consequent depressing effect on prices of residential property in proximity to pipelines and a 1973 pipeline explosion in Vermilion Parish.
Both plaintiffs’ experts were of the opinion that no diminution in value resulted to the lands adjacent to the pipeline due to *1052 any public fear of pipeline explosions or constructing residence in proximity to the lines. This was based on their experience in dealing with these type situations. Hebert, for defendant, was of the opposite view. We feel that there must necessarily be some adverse effect on the adjacent lands and will allow for such damage.
Hebert did not think there was such (public fear) type of severance damage to the land west (towards the prior Monterey pipeline) because of the previous pipeline but both he and Angers considered that the strip between the two pipeline servitudes would be reduced in value because of its isolation between the two servitudes. Hebert fixed the damage at 100 percent of the value; Angers fixed it at the value of a permanent servitude. The record did not reveal the width of the Monterey pipeline servitude and there was a question whether it provided any area other than the width of the pipe itself. Counsel for plaintiff agreed to treat it as covering only the width of the pipeline. Thus, the affected area would be a strip 20 feet wide (35 feet, the distance between the two pipes, less 15 feet, half the width of the servitude sought in this case) by 1,296 feet, the length of the servitude across plaintiff’s property. This would total 26,000 square feet or /io of an acre. Using the 75 percent valuation of the servitude previously employed by us, the Angers estimate of the extent of damage and the accepted land valuation of $1,250 per acre, we compute ($1,250 X %o X 75%) severance damages to this strip at $562.50.
Hebert expressed a severance damage percentage of 5 percent as to a 300-foot strip east of the servitude. He considered the prior Monterey line as having effected a substantial (10%) devaluation of this area. While we doubt whether the damage would be consistent throughout the strip, it appears that said percentage would result in. an overall realistic amount. The affected strip (300 ft. X 1,296 ft.) roughly equals 9 acres. Using said percentage and Angers’ valuation of $1,250 per acre, we calculate severance damages on the east side at $753.40.
We do not conclude that the bulk-heading expense was necessary or the amount allowed for erosion proper. Defendant’s evidence on this consisted in the main of the testimony of Roy Young, a contractor, to the effect that the point where the pipeline crossed the drainage canal about 6 feet of dirt had sloughed off for a distance of 100 feet on each side of the canal. Defendant’s husband confirmed this to some extent. It was brought out that Young had observed this condition in February prior to the completion of defendant’s cleaning-up operations. Mr. John Zieba, a consulting engineer specializing in pipeline construction and apparently unbiased except to the extent that he was employed to investigate the matter, visited the area in April and observed no sloughing off or erosion. Photos of the canal banks taken at this time revealed a normal canal bank except for lack of grass thereon. Incorporated testimony from the other two suits of knowledgeable individuals in the field was to the effect that bulkheading is rarely used at these pipeline crossings. Defendant’s husband testified that there was no erosion at the point where the old Monterey pipeline crossed the canal. We think there is a failure of preponderating evidence in support of the bulkheading claim and must disallow it. However some erosion will occur and, until natural resodding, protective measures will be necessary. For these we will allow the sum of $800.
Neither the claim for levee repair nor that for restoring pasture were alleged in defendant’s claim, but no objection based on failure to plead was offered to the evidence on these items, the trial court allowed them and, in brief before this court, plaintiff does not urge such failure of pleading. Accordingly, we will consider them.
Evidence on levee repairs consisted of an incidental mention by defendant’s husband that the levee near one of the canals was not as level as before and Young’s testimony that there were three or four levees that needed restoration along with his bill to “furnish dozer and backhoe *1053 to restore levees and repair damage to field” for $450. As previously noted, Young visited the property before completion of finishing-up operations. Because of the untimeliness of Young’s observation and the absence of any evidence showing the final condition of levees, we conclude the proof fails on this issue and will eliminate the item from the recovery list.
The proof for the pasture damage claim consisted of a sort of list of costs made by Mr. Delahoussaye, the agronomist who testified in the two Girouard expropriation suits, and a stipulation regarding his testimony. The list consisted of lime, fertilizer, Bermuda clover mix and land preparation, all totalling $555. Defendant’s counsel sought a stipulation that Mr. Delahoussaye would testify that such amounts were necessary. Plaintiff’s counsel objected to the stipulation. Apparently, the objection was based solely on irrelevancy in that such a claim was based on failure of plaintiff to meet the requirements of the judgment regarding “double ditching,” that is, the separate retention of the topsoil and returning it to the ditch as topsoil. He (plaintiff’s counsel) argued that defendant’s remedy was not by way of a damage claim but by enforcement of the judgment provisions. We cannot agree with this argument. If plaintiff has failed to comply with the judgment provisions defendant is not restricted to the remedy of specifically enforcing them and may claim damages. We have some doubts that defendant’s counsel actually agreed to the stipulation under the circumstances. However, it is noted that the trial judge allowed the item although not expressly ruling on the stipulation. He must have concluded that it was an effective stipulation. Accordingly, we treat it likewise. With such a stipulation, there is sufficient proof of the item and we will allow it.
Therefore, we allow the following elements of compensation:
1. Permanent servitude $ 835.00
2. Temporary servitudes 100.00
3. Severance damages:
West side $ 562.50
East side 753.40
Total $ 1,315.90 1,315.90
4. Pasture damage 555.00
5. Erosion 800.00
Total $3,605.90
Appellant challenges the fixing of experts’ fees, one being that of Hebert in the amount of his bill and supposedly based solely on it. We doubt that the trial judge relied solely on the bill. In any event, the amount appears reasonable and we will not disturb it. Further complaint is made as to fees of witnesses who did not appear at the trial in this case. T. J. Stevens had testified in the other two expropriation cases and his testimony was incorporated into this case by stipulation. Full compensation for him is provided in those other cases. He rendered no additional services for this case. A fee herein would constitute overpayment and will not be allowed. Dela-houssaye spent time in determining the pasture damage and the cost of correcting it. This was of assistance to the court. The stipulation obviated his presence at trial, but we do not think the trial judge abused his discretion in allowing this fee.
Accordingly, for reasons assigned the judgment of the district court is amended by reducing amount of the award in favor of Irene Meaux Broussard and against Intrastate Gas Corporation to $3,605.90 plus interest from date of expropriation demand until paid and for all costs in the trial court. The expert fee of the witness T. J. Stevens is disallowed. All costs of this appeal are to be borne equally by appellee and appellant.
AMENDED AND AFFIRMED.