355 So.2d 1327 (1977)
PRENTICE OIL AND GAS COMPANY
v.
Vernon L. CALDWELL, Jr., and Shell Oil Company.
No. 11642.
Court of Appeal of Louisiana, First Circuit.
November 21, 1977.
Rehearing Denied March 20, 1978.
Writ Refused May 12, 1978.
*1328 Stanwood R. Duval, Jr., Houma, David B. Klotz, Shreveport, for plaintiff and appellant.
Philip J. McMahon, Houma, Robert B. Shaw, New Orleans, for defendant and appellee.
Before BLANCHE, COVINGTON and CHIASSON, JJ.
CHIASSON, Judge.
Plaintiff appeals a judgment denying its claim for damages under Article 667 of the Louisiana Civil Code for the alleged diminution in market value of its property (Cynthia Plantation) due to the construction and operation of a 16 inch high pressure gas transmission pipeline by the defendant Shell Oil Company, on the property of the defendant, Vernon L. Caldwell, Jr., whose property (Magnolia Plantation) is contiguous to and north of plaintiff's property.
The defendants have not answered nor have they taken an appeal.
The facts giving rise to this suit are as follows: The said plantations are located on Louisiana Highway 311 in Terrebonne Parish, approximately eight miles north of Houma and seven miles southwest of Thibodaux; Vernon L. Caldwell, Jr. granted a right of way easement to Shell Oil Company in close proximity to the boundary line between the property of Caldwell and the property of plaintiff; at all times pertinent to the suit herein, land owned by plaintiff adjacent to the pipeline is improved farm land, recreational land and drained pasture land; the said pipeline runs parallel to the northern boundary line of Cynthia Plantation from east to west a distance of 15,325.85 feet or approximately 2.9 miles, at varying distances from 16.4 feet to 23.8 feet from the plaintiff's property; the gas transmission line has a designed pressure of 1312 pounds; the property of defendant Caldwell runs parallel to and adjacent with the property of plaintiff for the entire *1329 length of plaintiff's northern boundary; and, the property of defendant Caldwell extends in depth to a distance of more than 300 feet north of the location of the pipeline.
Plaintiff claims that a strip of land 250 feet wide by 15,325.84 feet in depth, or approximately 87.95 acres, has sustained a diminution in market value in the amount of $161,305.00 because of the presence of Shell's high pressure gas transmission pipeline on Caldwell's property.
The trial court held that the highest and best use of plaintiff's property is for farming, private recreation, and cattle grazing and that plaintiff had failed to prove any diminution of value to its property. We affirm.
The plaintiff assigns ten specifications of error committed by the trial court which can be summarized as follows:
That the trial court erred:
(1) In holding that the mere presence of a high pressure gas pipeline does not have the psychological effect of causing fear which results in a diminution in market value of the property located adjacent thereto;
(2) In holding that the highest and best use of plaintiff's property was for agriculture, recreation and grazing and not for multi-purpose development, i. e., residential, commercial, and light industry;
(3) In holding that the plaintiff has failed to prove its damages;
(4) In failing to admit in evidence the Land Use Plan for plaintiff's property;
(5) In failing to tax as costs the entire fee of plaintiff's expert and the fee of the court reporter.
Article 667 provides:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
Article 668 provides:
"Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
"Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's (neighbor's) house, because this act occasions only an inconvenience, but not a real damage."
In Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La. 1975), the Supreme Court held:
". . . the extent of inconvenience the property owner must tolerate without redress depends upon the circumstances. When the actions or works cease to be inconveniences and become damaging is a question of fact. The problem is one which involves the nature of the intrusion into the neighbor's property, plus the extent or degree of damage. No principle of law confines this damage to physical invasion of the neighbor's premisesan extrinsic injury, as it were. The damage may well be intrinsic in nature, a combination of facts and conditions which, taken together, do not involve a physical invasion but which, under the circumstances, are nevertheless by their nature the very refinement of injury and damage.". . .
The jurisprudence of this state in expropriation proceedings is to the effect that the mere presence of a high pressure gas pipeline does have a psychological effect of causing fear which deters prospective purchasers and impairs market value of property adjoining said pipeline. Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., 203 La. 787, 14 So.2d 636 (1943); Texas Pipeline Company v. Barbe, 229 La. 191, 85 So.2d 260 (1955); Texas Gas Transmission Corporation v. Hebert, 207 So.2d 368 (La.App. 3rd Cir. 1968); Collins Pipeline Company v. New Orleans East, Inc., 250 So.2d 29 (La.App. 4th Cir. 1971); Louisiana Intrastate Gas Corp. v. Girouard, *1330 336 So.2d 1042 (La.App. 3rd Cir. 1976); Louisiana Intrastate Gas Corp. v. Broussard, 336 So.2d 1049 (La.App. 3rd Cir. 1976). However, a finding to the contrary by the trial judge does not necessarily require reversal, for in order to recover damages for diminution in value to his property under Article 667, plaintiff must prove that the value of his property was in fact diminished due to the existence and operation of the pipeline on the land of his neighbor.
There is sufficient basis in the record to support the trial court's determination that the highest and best use of plaintiff's property is for farming, private recreation and cattle grazing. Mr. Lennis X. Lamulle, who is a real estate appraiser from New Orleans, testified that he has made appraisals in Terrebonne Parish for some time. Mr. N. Charles Shaver of Thibodaux, who is a realtor and appraiser in the Lafourche and Terrebonne Parish area, testified that he had been involved in the real estate business in that area for the last eight years. Mr. Lamulle testified that his inspection of Highway 311 revealed some residential and industrial uses of the property along Highway 311, but that these uses were practically confined to the extreme ends of the highway (i. e. at the north side of Houma and at the north end of Highway 311). He testified that between those two points, it is almost totally committed to agriculture with the exception of one or two subdivisions and one or two large plantation homes. The highest and best use, according to Mr. Lamulle, was for agricultural and recreational purposes. Additionally, he felt that the development trend would concentrate along Highways 24 and 308 which parallel Highway 311 from Houma for a distance because of the recent conversion by the highway department of those highways into a major four lane, the development of large shopping centers between Houma and Thibodaux, the availability of residential property, the accessibility to schools and churches, and the development of subdivisions between Houma and Thibodaux along that thoroughfare. He further stated that development along Highway 24 obviated the need for development along Highway 311.
Mr. Shaver also testified that he felt the highest and best use of the subject property was for agricultural purposes. He testified that according to his inspection of Highway 311, residential development in Houma along that highway was within four miles of Houma and that the commercial development seemed to be concentrated mainly between Hollywood Road and St. Charles Street in Houma. Mr. Shaver also stated that all the land in the general vicinity of the subject property was used for sugar cane farming and that because it was located almost directly between Houma and Thibodaux, it would be quite some time before pressure for residential development would bear upon it from either city. Furthermore, he was of the opinion that almost all industry located along Highway 311 related to the oil industry in some form or to the construction industry, and the reason they were located closer to Houma rather than at the north end of Highway 311 was to be closer to their service areas.
Under cross examination plaintiff's expert admitted that of the thirty-two industries that he counted along Highway 311, that only four were located north of Hollywood Road in Houma, which is approximately eight miles from the subject property, and of the seven subdivisions that he counted only three were located north of Hollywood Road.
Notwithstanding the admittedly substantial demand for property for residential, commercial and/or industrial, we find that the record contains substantial evidence that there is no demand upon plaintiff's property for such use, and that it was not error for the trial court to have found the highest and best use of such property was for agricultural, recreational, and cattle grazing purposes. The record reveals that 95% of the surrounding land is used for the sole purpose of sugar cane farming as was the subject property up until the trial. The so-called demand and development along Highway 311 has simply not occurred as yet, nor will it occur within *1331 the reasonably foreseeable future as testified to by defendant's experts. Furthermore, assuming that we are to follow the same standards for determination of damages as is followed in expropriation cases, it must be noted that "highest and best use" is determined by the most profitable use to which the property may be put in the foreseeable future, excluding remote and speculative value. The courts have followed this test for "highest and best use." City of New Orleans v. O'Krepki, 162 So.2d 76 (La. App. 4th Cir. 1964), writ refused, 246 La. 345, 164 So.2d 350 (1964).
In Central Louisiana Electric Co., Inc. v. Harang, 131 So.2d 398, 401 (La.App. 1st Cir. 1961), this Court pointed out:
"It is common knowledge that any tract of land wheresoever situated may be physically divided into residential plots or lots and subdivided irrespective of the demand for such property. However, potential subdivision use, to serve as the basis for establishing market value in an expropriation proceeding, must be shown to be reasonably prospective, as distinguished from remotely prospective, so as to remove said potential use or classification from the realm of guesswork, speculation and conjecture. If such potential future use is shown within the reasonably near future the owner is entitled to compensation on the basis of best and highest use for subdivision purposes even though the property affected be not in use for such purpose at the time of taking. However, if the potential (as, indeed, there is a potential in every case no matter how remote) is so indefinite or remote as to be predicated solely upon speculation and conjecture, it may not serve as the criteria of market value."
As for plaintiff's assertion that his property was damaged by 30%, even if its highest and best use is found to be for agricultural, recreational and cattle grazing purposes, he cites several cases for the proposition that severance damages are properly awarded to farm land and other rural estates which lands were adjacent to and damaged by the existence and operation of high pressure pipelines. Trunkline Gas Company v. Verzwyvelt, 196 So.2d 58 (La. App. 3rd Cir. 1967); Texas Gas Transmission Corporation v. Pierce, 192 So.2d 561 (La.App. 3rd Cir. 1966); United Gas Pipeline Company v. Singleton, 241 So.2d 93 (La.App. 3rd Cir. 1970); Texas Gas Transmission Corporation v. Hebert, supra; Michigan Wisconsin Pipe Line Company v. Miller, 229 So.2d 182 (La.App. 3rd Cir. 1969, writs refused); Collins Pipeline Company v. New Orleans East, Inc., supra.
In Verzwyvelt, the court allowed severance damages for the disruption of the natural drainage; for the creation of patches and strips which will remain boggy for extended periods after rain for at least a year; for destruction of the fertile topsoil; for increasing the unit cost of producing cotton; for preventing utilization of a strip 141 feet in width by the entire length for the construction of any improvements; and for increasing the occasions necessary for inspections and maintenance crews to disturb the landowner in the use of his land.
In Pierce, severance damages to farm lands were allowed because of "the greater difficulty a prospective purchaser could anticipate in the cultivation of the rice field over the next few years because of the loss of fertility in the affected strip and its location."
In Singleton, the court limited its holding to similar severance damages allowed by it in Verzwyvelt and Pierce cases.
In Hebert, the court was dealing with suburban rural acreage.
In Miller, the court was also dealing with rural homesites, and if agriculture, they would suffer loss in agricultural value due to the added problems of drainage and cultivation.
In New Orleans East, Inc., the property was undeveloped and more or less swampy in nature. However, the property abutting the pipeline was variously zoned in places as commercial, residential, industrial and heavy industrial.
The instant case is not an expropriation proceeding nor was any part of plaintiff's *1332 property used in the construction of the pipeline. It is farm land and will not suffer any damages of the type listed in the Verzwyvelt and Pierce cases.
In Louisiana Intrastate Gas Corp. v. Girouard, supra, cited by plaintiff for the fear factor, the court, while allowing severance damages to land best suited for rural homesites, disallowed any damage to the farm land stating:
". . . The infrequent necessity of an owner or user's presence near the pipeline can occasion only a negligible adverse effect on its value. We think such devaluation is too slight to be cognizant in law and must disallow this claim."
Plaintiff contends the trial court erred in failing to hold that the testimony of Prentice's expert witness, Mr. Preston Babineaux, was reliable. He asserts that when the opinion of an expert regarding market value and severance damages is clearly supported by sufficient facts and experiences it must be given weight and cannot be ignored or minimized unless the record contains justification for the same. But it is equally true that the weight expert testimony is entitled to receive is determined by the professional qualifications and experience of the witness and the circumstance and materials on which the opinion was based. Galloway v. Gaspard, 340 So.2d 579 (La.App. 1st Cir. 1976). In his written reasons for judgment, the trial judge thoroughly reviewed plaintiff's expert appraisal and explained, in detail, his reasons for not accepting the testimony of that expert. Sufficient justification for the rejection of the testimony of that expert appears of record. The trial judge did not commit manifest error by accepting the testimony of defendant's expert who was more familiar with the subject property than was plaintiff's expert.
Plaintiff concedes that it had the burden of proof to prove a diminution in value of the property located adjacent to a high pressure gas pipeline. Plaintiff contends it met this burden by the testimony of its expert, Mr. Preston Babineaux, a real estate appraiser, developer and investment consultant and builder from Lafayette. Mr. Babineaux's testimony on the point of buyer resistance centered exclusively on his experiences in the sales and purchases of subdivision properties. He offered no evidence that farm lands, selling as farm lands, would suffer a depressed price because of the close proximity of the pipeline to the land. We concur with the trial court's ruling that plaintiff failed to prove by a preponderance of the evidence any diminution in value to his farm as a result of the presence and operation of a high pressure gas pipeline on defendant's property.
Plaintiff also contends that the trial court erred in failing to admit into evidence plans of plaintiff's proposed "Cynthia City" on the subject property adjacent to the pipeline. In this respect the trial court found:
"In 1971 the plaintiff, through T. Baker Smith & Sons, Inc., civil and consulting engineers, employed Diversified Economics Planning and Association, Inc. to prepare a land use plan for the plaintiff. Mr. Jim McDonald, a major stockholder and president of said company, supervised the making of the plan. Mr. Jim McDonald testified (Tr. p. 13) that professionally he was an urban planner. He produced an urban plan.
"However, the plaintiff did not follow up on it by implementing it. It did not cause a civil engineer or land surveyor to survey in and stake and measure out on the ground such a plan or subdivision. It did not thereon establish and dedicate streets, lots, etc. It did not submit such a survey plat and statement of proposed restrictions to the Parish Planning Commission for approval. It did not file such an approved subdivision plan of record. It did not attempt to sell any of such land for residential, commercial and or industrial purposes. It did not do anything in using or developing the land consistent with developing any residential, commercial or industrial qualities.
"It did not do anything consistent with implementing the urban plan.

*1333 "It did continue to raise sugar cane upon it and to use some of it for pasture of cattle."
We find nothing in the record contrary to the trial court's finding that plaintiff took no steps in the furtherance of such project. Absent such evidence, we cannot say that it was manifest error for the court to refuse to admit mere plans of the proposed future development as a basis for the recovery of damages.
With respect to the matter of fees for plaintiff's expert, R.S. 13:3666 provides:
"B. The Court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) from the testimony adduced upon the trial of the cause, the court shall determine the amount thereof and include same or,
(2) by rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment."
The fixing of expert witness fees lies within the sound discretion of the trial court and should not be disturbed unless clearly erroneous. Williams v. Harvey, 328 So.2d 901 (La.App. 4th Cir. 1976).
Plaintiff's sole contention is that in an expropriation proceeding the expert appraiser who testifies is entitled to reasonable compensation for his appearance in court and for preparatory work done by him. We once again point out that this is not an expropriation proceeding and that the trial court was correct in fixing a fee based solely on court appearance. We find no abuse of discretion on the part of the trial judge.
The judgment included fees for the court reporter in the amount of $576.00 for preparation of the transcript; therefore, we find no error as plaintiff contends in that respect.
For the above reasons, the judgment of the trial court is affirmed.
AFFIRMED.